[Civ. No. 8979. First Appellate District, Division One.—April 20, 1934.]

FARMERS AND MERCHANTS' NATIONAL BANK OF LOS ANGELES (a National Banking Association), as Trustee, etc., et al., Respondents, v. ROY C. BAILIE, Appellant.

Henry Trowbridge for Appellant.

Howard F. Shepherd and John F. Bender for Respondents.

THE COURT.—This is an action to terminate defendant's rights under a written lease and to quiet plaintiffs' title to the premises described therein.

The lease was for a term of ninety-nine years commencing on June 1, 1923, and was executed by Edward Caswell, now deceased, and Minnie M. Caswell, his wife, to Roy C. Bailie (who will be hereinafter referred to as the lessee). In addition to all taxes and assessments levied on the property after the date of the lease the lessee agreed to pay upon its execution the sum of $350 as rental for the month of June, 1923, and the same amount on the first day of each month thereafter for a period of ten years, and from then on the sum of $450 each month during the remainder of the term; further that he would within five years from June 1, 1923, commence the erection upon the property of a building which should be worth not less than $20,000, and complete the same at the earliest practicable time thereafter, it being stipulated that the building should cover the entire frontage of the premises on a certain street and extend back not less than sixty feet. At the date of the lease there were upon the premises certain structures, which it was agreed the lessors might remove at any time, but the rents of which they were to retain until such removal. It was also agreed that the lessee might at any time after June 1, 1923, by a sixty-day notice require the removal of the structures at the lessors' expense within

sixty days after the giving of such notice, and that upon such removal the lessee would within ninety days thereafter commence the excavation work for the foundation of the new building. The lessee further agreed to deposit with the lessors the sum of $1,000 as security for the performance of the terms of the lease pending the construction of the building, it being stipulated that if in the meantime there should occur a default in the payment of rent the deposit might be applied thereon; and that in such case the lessee would renew the deposit, and the failure to do so within five days after written notice should be deemed a violation of the terms of the lease. The lease also provided that should the lessee fail to pay the rental provided for, or to perform any other covenant or condition contained therein, the lessors might at their option, upon thirty days' notice prior to the erection of the new building and upon sixty days' notice after its completion, be entitled to declare the lease terminated and the rights of the lessee ended.

The lessee paid the rent to and including September 1, 1927, but no longer, and on or about January 1, 1928, the lessors applied said deposit to that extent on the rent which became due in October, November and December, 1927, leaving a balance unpaid of $50. On January 6, 1928, written demand was made upon the lessee that he replenish his deposit fund, but this he failed to do. No payments of rent have since been made, nor were the taxes paid after the year 1927. Following their demand the lessors brought suit to terminate the lease, but it appears that no notice of election to terminate the same had been given, and the suit by stipulation was subsequently dismissed.

Following their said demand and after the suit had been commenced defendant on February 6, 1928, gave notice to the lessors to remove the buildings on the property in order that he might proceed with the erection of the new building. The buildings were not removed, and no further action appears to have been taken except in connection with the suit mentioned until October 1, 1930, when the lessors served upon the lessee a demand for the installments of rent for the months of January to September, 1930, inclusive, with a notice of default, and declared their intention in case of nonpayment to commence proceedings

to adjudge a forfeiture of the lessee's rights under the lease.

On November 8, 1930, they served a further notice reciting the above facts, and that they elected to forfeit the lessee's rights ''for breach of the obligations contained therein to pay said rental . . . '' . The present action was commenced in November, 1930.

The lessee filed an answer and cross-complaint, alleging defaults by plaintiffs, and sought to recover the rentals and taxes which he had paid.

After a hearing the trial court found for plaintiffs, and entered its interlocutory judgment, providing that, should the lessee within thirty days pay the unpaid installments of rent with interest, certain taxes, and an attorney's fee fixed by the court, he should be then restored to his rights under the lease; otherwise that a final judgment be entered declaring his rights terminated. The lessee failed to comply with the interlocutory judgment, and a final judgment, from which he has appealed, was recorded.

The court found that the lessee failed to perform any of his obligations after September, 1927, or to commence the erection of said or any building on the premises before the expiration of five years, from June 1, 1923, or at all. It was further found that although he never had physical possession of the premises it was untrue, as alleged by him, that plaintiffs had exclusive possession thereof, except the buildings mentioned, of which under the lease they were to retain the use; further, that the lessee on February 6, 1928, gave notice to said plaintiffs to remove said buildings in order that he might proceed with the erection of the new building, but in this connection that the notice, which was after his breaches of the lease, was not given in good faith, and that plaintiffs' failure to remove the buildings was due to such breaches, and that, had the lessee performed, the same would have been removed; further, that ''it was intended by the respective parties . . . that the right of the lessee to have the buildings on said premises removed was contingent and dependent upon the full and faithful performance by the lessee . . . of the obligations of said lease up to the time of the demand for the removal of said buildings . . . '' .

The lessee contends that the proceeding, being one to declare a forfeiture and to terminate his rights under the lease, was necessarily an action to rescind, and that he is therefore entitled to recover the amount of rent and taxes which he had paid.

■ It is the general rule that in case of a mutual abandonment of a contract or its rescission the amounts paid may be recovered. Such were the facts proved or admitted in the decisions cited by the defendant lessee. But a party in default cannot recover where his adversary who is not in default stands upon the contract (*Bradford* v. *Parkhurst,* 96 Cal. 102 [30 Pac. 1106, 31 Am. St. Rep. 189]; *Glock* v. *Howard etc. Co.,* 123 Cal. 1 [55 Pac. 713, 69 Am. St. Rep. 17, 43 L. R. A. 199]; and this is true notwithstanding a contract provides that a violation of its terms or conditions shall work a forfeiture and the contract thereupon become void and of no effect. Such a provision means only that the rights of the party violating it shall cease, and it remains in effect so as to protect the rights of the innocent party (*Central Oil Co.* v. *Southern Ref. Co.,* 154 Cal. 165 [97 Pac. 177]; *List* v. *Moore,* 20 Cal. App. 616 [129 Pac. 962]; *Hyman* v. *Harbor View Land Co.,* 46 Cal. App. 98 [188 Pac. 828]; *Winter* v. *Kitto,* 100 Cal. App. 302 [279 Pac. 1024]). ■ If, as urged by defendant lessee, the plaintiffs wrongfully neglected to remove their buildings, and thus in effect refused to deliver possession of that portion of the premises, it has been held that there can be no recovery of rent and the lessee is entitled to relief (*Camarillo* v. *Fenlon,* 49 Cal. 202; *Skaggs* v. *Emerson,* 50 Cal. 3; *Kelley* v. *Long,* 18 Cal. App. 159 [122 Pac. 832]; *California C. F. Corp.* v. *International etc. Co.,* 119 Cal. App. 738 [7 Pac. (2d) 349]; 36 Cor. Jur., Landlord and Tenant, secs. 1108, 1109, pp. 308, 309). Here, however, the lessee was not entitled to full possession until he gave notice of his readiness to perform his covenant to erect a new building, and in the meantime he was not excluded from possession of the portion of the premises not occupied by the old buildings. ■ This was exactly in accordance with the express provisions of the lease; and it is well settled that a tenant may be bound by a covenant to pay rent although he does not enter into the possession of the demised premises (36 Cor. Jur., Land-

lord and Tenant, sec. 1107, p. 307). ■ The lease did not expressly make the payment of rent and taxes a condition precedent to or concurrent with the lessors' obligation to remove the old buildings; but the court found that this was the intention; and it has been held that while the question depends somewhat upon the technical terms of the agreement, it rests more on the nature of the things to be done and their relation to each other (*Lowell etc. Meeting House* v. *Hilton,* 11 Gray, (Mass.) 407; *Connolly* v. *Haines-Ce Brook,* 277 Mass. 423 [178 N. E. 650]). Here it appears that the lessors were entitled to receive the rents and profits from these buildings until the lessee was ready to build, and their removal would have irrevocably terminated this income. That it was the intention that this would be sacrificed though the lessee at the time of his demand was in default would not in our opinion be a fair or reasonable interpretation of the lease in view of the circumstances shown. ■ Where the construction given an instrument by the trial court appears to be consistent with the true intent of the parties the appellate court will not substitute another interpretation though it seems equally tenable (*Kautz* v. *Zurich etc. Ins. Co.,* 212 Cal. 576, 582 [300 Pac. 34]). ■ Moreover, the court found that the lessee's demand and implied offer to perform was not made in good faith. It is essential in such cases that a party act in good faith and be able and willing to perform; and this is true notwithstanding the other party charged with the performance of a concurrent condition be unprepared to perform (6 Cal. Jur., Contracts, sec. 241, p. 405; *Doak* v. *Bruson,* 152 Cal. 17 [91 Pac. 1001]).

■ As a rule, the uncontradicted testimony of a witness may not be disregarded. Nevertheless the most positive testimony may be contradicted by circumstances in evidence which satisfy the court of its falsity (*Jenks* v. *Carey,* 136 Cal. App. 80 [28 Pac. (2d) 91], and cases cited therein); and in view of the lessee's previous and continued default, and that a suit to terminate his rights was pending, together with the facts, as testified, that he had caused to be prepared no architectural plan for the proposed building (such a plan being required by the lease) although he had a plan in mind, and that he relied upon

his wife's resources to furnish part of the necessary capital, which, however, so far as shown, she had not agreed to furnish, the court was reasonably justified in concluding that he was not acting in good faith.

He also complains of the allowance of an attorney's fee as part of the judgment.

The lease provided that "should it become necessary for the lessors to maintain any action or proceeding . . . to enforce any of the terms or conditions or covenants of the lease, or to protect any of their rights hereunder", the lessee should pay in addition to costs a reasonable attorney's fee to be fixed by the court. The court heard testimony as to the services rendered in this connection, and fixed the sum of $1,000 as a reasonable fee. Unlike the case of *Prichard* v. *Kimball*, 190 Cal. 757 [214 Pac. 863], where the action was not to enforce a term of the lease, here the action was brought to declare the lessee's rights thereunder terminated and for possession. A breach of the lease gave rise to such a proceeding, and the attorney's fee was properly allowed.

Plaintiffs claim that the interlocutory judgment determined all the points in controversy, that the appeal should have been taken therefrom rather than from the final judgment, and was consequently filed too late. In view of our conclusions on the merits of the case it will be unnecessary to determine this question.

We are satisfied that the findings are fairly sustained, and no error has been shown which would warrant a reversal of the judgment.

The judgment is affirmed.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 18, 1934.