[Civ. No. 8980. First Appellate District, Division One.—June 29, 1934.]

NATHAN W. HALE, Appellant, v. HARBOR PETROLEUM CORPORATION (a Corporation) et al., Respondents.

Archie G. Cope, E. O. Leake and J. J. Leake for Appellant.

Elliott & Aberle for Respondents.

THE COURT.—In 1925 the Flower Street Investment Company, a corporation, leased to plaintiff and another certain lots in Los Angeles County. The lease provided that the lessees should pay as rental twenty per cent of all oil, gas and other hydrocarbon substances produced therefrom. Later plaintiff acquired the interest of his colessee. Thereafter and prior to February 9, 1926, plaintiff assigned fractional undivided interests in all the oil and gas to be produced aggregating fifteen per cent thereof. These interests were sold without the permission of the state corporation commissioner. Wells were drilled and oil produced, and in January, 1926, plaintiff caused defendant Harbor Petroleum Corporation to be organized under the laws of Nevada. He then offered to the directors of the corporation, in consideration of the issuance to himself of certain preferred and common stock of the company, a conveyance of certain oil properties, including the lease of the lots first mentioned. The offer so far as material read as follows: "The undersigned proposes to convey or cause to be conveyed to the Harbor Petroleum Corporation of Reno, Nevada, . . . the oil well known as Nathan W. Hale No. 3, situated on Ludy street on lots 15, 16 and the north half of Lot 17 Hunt Villa Tract, East Signal Hill, Los Angeles county, California, subject to landowners' and like royalties of thirty-five per cent, with an outstanding indebtedness of $100,000 (I think not over $75,000) on all three of the wells, with the following understanding, that $30,000 to $40,000, being the amount of cash put in by various people for certain profits made from each well, which additional amount must be taken care of with preferred and common stock in addition to the indebtedness, for the following consideration, to wit: $200,000 of the preferred stock and $100,000 of the common stock, such stock to be issued upon call and delivery of assignments of proportional interests as above proposed." The directors by resolution accepted the offer, and plaintiff on February

11, 1926, executed to the corporation an assignment, the material parts of which are as follows:

"Know all men by these presents: That we, Nathan W. Hale and Laura A. Hale, husband and wife, in consideration of the sum of ten dollars to us in hand paid, receipt whereof is hereby acknowledged, do hereby sell, assign, convey and set over unto the Harbor Petroleum Corporation, Reno, Nevada, all our right, title and interest in and to that certain oil and gas lease (description of lease and full description of property omitted).

"This assignment covers and includes only Lots 15, 16 and the north half of Lot 17 in Hunt Villa Tract, county of Los Angeles, State of California. . . .

"This agreement is made upon the consideration of the Harbor Petroleum Corporation strictly performing all of the covenants and conditions in said lease provided as to all matters therein.

"This assignment also conveys and assigns all improvements, including the well now standing cemented, and all personal property on said lease including pipe lines, derricks and other equipment, with the agreement and understanding that said Harbor Petroleum Corporation assumes all debts and obligations against said lease and its equipment as per written proposition submitted to and accepted by said Harbor Petroleum Corporation."

The corporation until August, 1928, paid sums monthly to the holders of the securities previously sold by plaintiff as their portion of the oil and gas produced on the property. On September 28, 1928, it notified the holders that no further payments would be made, and in January, 1929, the latter brought suit against the company for an accounting. It was stipulated in the present action that a judgment, which became final, was entered in the suit mentioned, adjudging these interests to be void in that the same were sold without the permit required by law. By the present action plaintiff sought to reform the assignment mentioned. He alleged that by a mutual mistake of the parties and their interpretation of the law with respect to the validity of the securities sold by him the assignment to the company did not correctly set forth the agreement, it being the intention that the percentage of such oil and gas represented by said securities should be reserved to plaintiff.

The trial court found against these allegations and entered judgment for defendant. From this judgment the plaintiff has appealed.

The Corporate Securities Acts in force at the time the securities were sold prohibited such sales without a permit from the corporation commissioner. (Stats. 1917, p. 673; Stats. 1923, pp. 87–89; Stats. 1925; p. 962.) Nevertheless it has been held that where instruments embracing fractional interests in oil or gas to be produced under a lease are sold by the operating lessee without a permit, and the purchasers are not *in pari delicto* with the defendant issuing them, the latter cannot as against the holders of such securities take advantage of their illegality, and that a transferee of the lease with notice is likewise bound. (*Eberhard* v. *Pacific Southwest etc. Co.*, 215 Cal. 226 [9 Pac. (2d) 302]; *Western Oil etc. Co.* v. *Venago Oil Co.*, 218 Cal. 733 [24 Pac. (2d) 971].) What facts, if any, other than that the securities were issued without a permit, led to the rendition of the judgment mentioned do not appear. However, plaintiff was not a party to the suit and was not bound by the judgment; nor would the security holders be concluded thereby in an action against him. (Freeman on Judgments, sec. 442; 34 Cor. Jur., Judgments, sec. 1407, p. 988; *Victor Oil Co.* v. *Drum*, 184 Cal. 226 [193 Pac. 243].)

So far as shown the security holders have not sought to rescind their contracts with plaintiff, nor has he reimbursed them for the amounts they paid. Defendant company asserts that it paid them in dividends sums equivalent to the investment; but however this may be, there was no finding thereon. In 1930 after said judgment was entered the present action was commenced.

Plaintiff contends that the evidence reasonably supports but one conclusion, namely, that by a mutual mistake of law the assignment to defendant company failed to reserve to him the interest which the securities issued purported to convey. He claims that he had no information or knowledge of any infirmity in the securities until after the assignment was made. However, much of his testimony on this point was not of the direct and positive character which might reasonably be expected. Nowhere does he state that he was unaware of the provisions of the statute which prohibited such issues, and he testified that as early as 1926,

and after consulting an attorney regarding their legality, certain of these stocks were issued; further, that previous to such consultation he had heard that such issues were illegal but that the attorney advised him to the contrary. The attorney, however, testified that as early as 1925 he advised plaintiff that in his opinion such securities were unlawful, and that if their sale continued "he would· get himself into trouble"; further, that in August and September, 1928, before the assignment was made to the company, he advised plaintiff of a decision by a department of the Superior Court of Los Angeles holding such securities to be invalid. The testimony on this question was sharply conflicting, and we find nothing in the record which would compel the conclusion that at the time the assignment was executed either party was ignorant of the provisions of the act; or, taking the testimony of defendants' witnesses to be true (which we must on appeal) (*Dreyer* v. *Cole*, 210 Cal. 339 [292 Pac. 123]), that anything was said or done to mislead the plaintiff.

In connection with the testimony of the attorney evidence was adduced which tended to show that during and after this period he believed the securities to be valid. ■ Notwithstanding evidence of inconsistent declarations and conduct by a witness the question as to what extent this testimony should be believed is for the trial court to determine. (*Withers* v. *Massengill*, 148 Cal. 769 [84 Pac. 153]; *Estate of Gird*, 157 Cal. 534 [108 Pac. 499, 137 Am. St. Rep. 131].)

It was shown with respect to the portion of plaintiff's offer which reads: "with the following understanding that $30,000 to $40,000, being the amount of cash put in by various people for certain profits made from each well, which additional amount must be taken care of with preferred and common stock in addition to the indebtedness," that plaintiff and his associates subsequently received from the company on this account preferred stock of the value of $30,000 and common stock of the par value of $15,000. While the plaintiff testified that the parties believed that the securities issued to him were valid, nevertheless the evidence adduced by defendants was sufficient to show that plaintiff as a reasonably intelligent man knew or had reason to believe that their issuance without a permit was contrary to

the Corporate Securities Act. This being true the assignment, which was merely made subject to outstanding royalty claims, fully expressed the intention of the parties. Whether the refusal of the defendant oil company to perform these agreements would have constituted a ground for rescission by plaintiff we need not decide as he is not seeking such relief. We are satisfied that the finding against the alleged mistake is fairly supported.

Moreover, it appears that the court found that on September 12, 1928, for a valuable consideration plaintiff transferred to the attorney for the company all his right and title, claim or interest in any of the stock or properties of the corporation, and discharged the latter from any and all claims which plaintiff might have asserted by reason of any matter whatsoever. This document was later assigned to the company. It was executed following a telegram from said attorney dated September 7, 1928, and addressed to the plaintiff offering $4,500 for certain stock and notes held by plaintiff, and the surrender of ''all other notes, claims and demands, in satisfaction of all obligations against the company; also assignment and transfer to company of all interest in Athens well or Ludy well, making complete extinguishment and release of all claims against or interest in the company or its properties. . . . '' The Ludy well referred to is the well drilled on the leased property involved in this action and the offer thus made was accepted by plaintiff.

According to the president of the company, H. W. Elliott, this transaction grew out of the fact that after the termination of the suit first mentioned plaintiff asserted that he had not received the amount of stock to which he was entitled; and after negotiations, during which all his claims, including those in the present suit, were considered, the above offer was made and accepted. Plaintiff denied that the claims asserted in the present action were so considered, or that he intended to release or compromise the same. The questions of evidence, and of the validity and effect of the instruments, were primarily for the trial court. (53 Cor. Jur., Release, sec. 117, p. 1290.) The document fairly shows an intention to settle all claims against the company; this was the conclusion of the trial court; and in view of the circumstances disclosed by the evidence we cannot say that its finding is un-

462

supported. ■ Where the construction given an instrument appears to be consistent with the true intent of the parties as shown by the attendant facts and circumstances another interpretation will not be substituted on appeal though it seem equally tenable. (*Kautz* v. *Zurich Gen. A. & L. Ins. Co.*, 212 Cal. 576 [300 Pac. 34].)

The evidence believed by the trial court sufficiently sustains its conclusions, and no error has been shown which would warrant a reversal.

The judgment is affirmed.