[Civ. No. 1653. Fourth Appellate District.—October 15, 1937.]

GEORGE HERZ & COMPANY (a Corporation), Appellant, v. FRANK SOLT et al., Respondents.

Guthrie & Curtis for Appellant.

Wilson & Coughlin for Respondents.

MARKS, J.—Plaintiff sued to recover a balance of $1,067.55 alleged to be due for grading and oiling a portion of Fifth Street in the city of San Bernardino. Judgment went for defendants and this appeal followed. In its opening brief plaiп·'ℱ thus states the questions involved on this appeal:

"(a) Is there a true option contained in an agreement which provides that one party shall do a certain piece of street work under the direction of a second party, the value of the work to be of a fixed minimum, or more, at the option of the second party, the work to be paid for at cost plus ten per cent?

"(b) If such an agreement does contain an option, is such option exercised by the actual direction of the work contemplated by the agreement?"

Plaintiff's assignor, George Herz & Company, was a partnership. After the performance of the work here involved it assigned all its assets, including this claim, to the plaintiff corporation.

The defendants Douglas Shaw, Frank J. Solt and Robert F. Garner, Jr., and W. E. Daimwood and a number of other residents of San Bernardino who are not identified, were interested in improving Fifth Street from Ramona Street west to the city limits of San Bernardino. Meetings were held and the four we have named were chosen or acted as directors or managers of what was termed the Fifth Street Improvement Association. ■ Subscription lists were circulated and signed by a number of persons who severally agreed to pay the respective amounts set opposite their names. It is clear that among themselves the respective obligations of the signers of these subscription lists were several and not joint and several. (*Moss* v. *Wilson*, 40 Cal. 159; *Thomas* v. *Anderson*, 58 Cal. 99; *O'Connor* v. *Hooper*, 102 Cal. 528 [36 Pac. 939].)

On August 7, 1931, plaintiff's assignor had the following contract prepared and executed:

"San Bernardino, California

"8/7/31

"Fifth St. Improvement Dist.

"San Bernardino—Calif—

"Gentlemen :—We agree to grade and oil Fifth Street from Ramona St. to the west city limits force account cost plus 10% under your direction. It is agreed we will do a minimum of fifteen hundred dollars worth of work or more at your option and hold the City of San Bernardino free of all debts for labor X material.

"George Herz X Co.

By George C. Herz.

5th St. Imp. Assn.

W. E. Daimwood, Pres.

Frank J. Solt, Secy.

Robert A. Garner, Jr.

Douglas M. Shaw."

Plaintiff's assignor immediately started the improvement and completed it in about thirty days. It rendered a bill for $3,392.55 and was promptly paid $1500. It was later paid $775. These payments were made by checks signed by Daimwood on the Fifth Street Improvement Association's account. Plaintiff's assignor also credited the account with an additional $100, the amount of two subscriptions evidently ob-

tained by it. The correctness of the account and. of the balance of $1,017.55 unpaid on it is not questioned.

Mr. Daimwood died before this action was instituted, so his testimony was not available to either party.

It is plaintiff's theory that the members of the Fifth Street Improvement Association were partners in the enterprise and were represented by the four directors or managers we have named; that each partner was jointly and severally liable for the debts contracted by their representatives; that these representatives authorized the work to be done under the written contract and that each member is liable for the unpaid portion of the bill. As an alternative, they urge that if it be held that the contract contained an option that must have been exercised by defendants in order to obligate them for more than $1500, that Frank J. Solt was on the job almost every day, evidently acting as inspector for the association; that Solt knew or should have known that the work was costing more than $1500; that as he permitted it to continue and the association received the benefits from it, its members cannot now escape their obligations to pay the bill.

Plaintiff relies principally on the case of *Leake* v. *City of Venice,* 50 Cal. App. 462 [195 Pac. 440], where an association of individuals staged an automobile race in that city. The court there held that the members of the association were partners in the enterprise and were jointly and severally liable for the unpaid bills. (See, also, *Sims* v. *Frew,* 24 Cal. App. 725 [142 Pac. 106]; *Burrell* v. *Capt. H. A. Crow Post, etc.,* 102 Cal. App. 716 [283 Pac. 370]; *Case* v. *McConnell & Forrester,* 5 Cal. App. (2d) 688 [44 Pac. (2d) 414].)

The parties disagree as to the proper construction to be placed on the contract. Plaintiff contends that it was a contract to construct the portion of the road therein described and that it does not contain an option which must first be exercised by defendants before work in excess of $1500 should proceed. ██ In weighing this argument we must point out that the writing was prepared by plaintiff's assignor and that if there be any ambiguity in it that may reasonably bear one of two constructions, the interpretation should be adopted most favorable to defendants who did not prepare the contract and were not responsible for the ambiguity. (*Witherow* v. *United American Ins. Co.,* 101 Cal. App. 334 [281 Pac. 668].) The initial power to construe the contract and deter-

mine its true meaning is in the trial judge. If the construction he placed upon it was neither arbitrary nor unreasonable but a fair interpretation of the language used, it should be accepted on appeal. We conclude that on the record the trial judge was justified in holding that the contract contained an option for work in addition to that costing $1500, which option the defendants might or might not exercise, as they chose.

The evidence on the question of what transpired between plaintiff's assignor and the association directors or managers concerning the amount of work to be done is in sharp conflict and cannot be reconciled. The testimony of George A. Herz, a witness for plaintiff, is clearly to the effect that W. E. Daimwood told him that the work should be completed after some of the directors or managers had been informed that it might cost as much as $4,000. It is admitted that Daimwood, for the association, not only paid the $1500 specified in the contract but an additional $775 that was collected from subscribers. It is also not denied that Solt was on the job almost every day and gave direction as to some of its details and in one instance asked that work be done in addition to that planned by plaintiff's assignor.

The three living members of the committee flatly denied that any of them or Daimwood had authorized any work in addition to that which would cost $1500.

Garner testified that he told Mr. Herz that the money from subscriptions was not coming in very fast and "not to spend any money that the association did not have and to watch it and be careful about it". Shaw's testimony is to the same general effect.

Solt testified:

"We explained to Mr. Herz that we had $1500 in the bank, and that was all we could spend—and we wanted to know just exactly how much it would cost, and it was all in the rough, approximately half a mile, and he said, 'Well, a good job will will cost you $4000'. Well, we were in a hurry to get this road through because we had worked and worked on the Board of Supervisors and finally got it over, and then we had got it through the City Council, and we were afraid if we let it go to another meeting we would probably have the action rescinded, and we wanted to get to work immediately. We said, 'Go ahead and open that street; we don't care what you

do with it; spend the $1500 and get the street open.' Now, that is what happened.''

This testimony presents the familiar situation of a conflict in the evidence on the question of the exercise of the option for additional work. The trial judge believed the evidence of defendants and accepted it as true. Thus the trier of facts resolved the conflict in favor of the defendants. We cannot disturb this finding on appeal.

Defendants have a unique explanation of the payment of the additional $775 and their silence in knowingly permitting the work to be completed after they had been informed that it might cost $4,000. No one knew just where the $775 came from. Mr. Daimwood was the one most interested in the project. He solicited most of the subscriptions and continued this work after the others had desisted. It is assumed that he raised this money after the work was completed and voluntarily paid it to the contractor.

Several witnesses for defendants testified that Mr. Herz told them that he had two agents soliciting subscriptions; that several property owners who had not subscribed to the association were going to pay fifty cents a front foot for their property which fronted on the improvement; that this would give plenty of money with which to complete the contract in a workmanlike manner; that they believed these statements and relied upon them and for that reason did not stop the work.

It is the province of the trial judge to weigh the evidence and within legal limits to determine its sufficiency. He accepted this evidence of defendants as true. Believing it as he did, the trial judge concluded, as he might, that it destroyed the effect of the estoppel that plaintiff sought to invoke.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.