[Civ. No. 12147. Second Appellate District, Division Two.—May 29, 1939.]

ELLA WALL, Respondent, v. THE EQUITABLE LIFE AS-SURANCE SOCIETY OF THE UNITED STATES (a Corporation), Appellant.

Newlin & Ashburn and Paul Sandmeyer for Appellant.

Lawler, Felix & Hall for Respondent.

CRAIL, P. J.—This is an appeal by the defendant from an order of the superior court granting plaintiff's motion for a new trial after judgment for the defendant.

The action is one at law, not in equity, for the recovery of damages for failure to pay death benefits upon a life policy—not one for the reformation of a contract. No contention is made by the plaintiff that the contract of insurance is ambiguous; in fact, she contended at the trial and again in the oral argument before this court that it is not ambiguous, and that none of the surrounding circumstances are admissible in evidence for the purpose of interpreting it.

One of the contentions of the defendant is that the defendant agreed to pay the death benefits "in the event of the death of the insured prior to the 12th day of September, 1936"; that it was established by the pleadings of the plaintiff and the findings of fact that the decedent died October 1, 1936, and that therefore the defendant was not obligated to pay the death benefits; that the defendant was entitled to judgment upon the interpretation of the contract of insurance, and therefore the court erred in granting the motion for a new trial.

The action was brought upon a term policy of insurance on the life of Frank L. Whipple in which the plaintiff was named beneficiary. The parts of the contract necessary for a discussion of the question involved are as follows: "The Equitable Life Assurance Society of the United States hereby insures the life of Frank L. Whipple (herein called the insured) for the term of ten years, and agrees to pay at its home office in the city of New York Three Thousand Dollars (the face of this policy) in the event of the death of the Insured prior to the twelfth day of September Nineteen hundred and thirty-six . . . This insurance is granted in consideration of the payment in advance of Twelve and 81/100 Dollars and of the payment quarterly thereafter of a like sum upon each twelfth day of December, March, June and September during the term of ten years, or until the prior death of the Insured." Suicide "within one year from the date of issue hereof, is a risk not assumed by the Society

under this policy''. The privilege of exchanging the policy for an ordinary life policy is limited in time to seven years from ''the register date hereof'', rather than from the date of issue. The register date of the policy is given as September 12, 1926.

Also, as a part of the policy and attached to the same were three applications, the first of which read as follows: ''I hereby apply for a policy on my life for $3,000.00 for the benefit of my mother . . . The policy to be on the 10 year Term plan. . . . I hereby agree that the policy issued hereon shall not take effect until the first premium has been paid.'' In this application Mr. Whipple stated that he was born ''on the 12th day of March, 1883. My insurance age at nearest birthday is therefore 43 years.'' Notwithstanding that a second and a third application were executed by Mr. Whipple in October and November, respectively, each of said applications was dated back to September 11, 1926, and in both of said applications he stated, ''My insurance age at nearest birthday is therefore 43 years.'' In both of these applications he requested that the term policy be issued with quarterly premiums of $12.81, which was the established quarterly premium for this type of policy issued on the basis of age at nearest birthday being 43 years, while if issued on the basis of age at nearest birthday being 44 years, the established quarterly premium rate would be higher.

The policy was dated November 19, 1926, but, as already stated, bore a register date of September 12, 1926, and thereon the age of the insured was specified as 43 years.

The policy provided for participation in the visible surplus and that such dividend should be payable annually ''beginning at the end of the second insurance year and on each anniversary thereafter''. The amount of each of the annual dividends payable on this policy issued on the basis of Mr. Whipple's age at nearest birthday being 43 years would be greater than if the policy had been issued as nearest birthday being 44 years.

The insured paid the first premium between November 2 and 6, 1926, and thereafter paid all of the remaining quarterly premiums required under the policy. The insured died within ten years of date of issuance of the policy and within ten years of first payment of premium, but after September 12, 1936. Judgment went for the defendant, and thereafter upon motion of the plaintiff a new trial was

granted, and it is from this order granting a new trial that the appeal is taken.

In our interpretation of the contract its language means exactly what it says when it says that defendant agrees to pay the insurance ''in the event of the death of the insured prior to the 12th day of September, 1936''. The policy was founded ''on the ten year term plan'', with the insured's age at nearest birthday stated as 43 years, and the last date such a policy could be made applicable to the insured was September 12, 1926, and the ten years insurance referred to in the policy was a period from September 12, 1926, to September 12, 1936.

It is the contention of the plaintiff that since the policy provided that ''It shall not take effect until the first premium has been paid,'' and since the premium was not paid until November, 1926, and since the policy was for ten years, that this extended the coverage until November, 1936. This contention is based on the unauthorized assumption that the payment of the initial premium of $12.81 obtained for Mr. Whipple insurance for three months following the date of said payment. The assumption, however, is contrary to the express agreement of the parties as contained in the policy. The policy expressly provides that ''the payment of any premium or installment thereof shall not maintain this policy in force beyond the date when the succeeding premium or installment thereof becomes payable''. The succeeding premium became payable December 12, 1926, and therefore, though the first premium was paid in November it did not continue the insurance beyond December 12, 1926. (*Jackson* v. *Washington Nat. Ins. Co.*, 13 Cal. App. (2d) 254, 257 [56 Pac. (2d) 1264] ; *Schick* v. *Equitable Life Assur. Soc.*, 15 Cal. App. (2d) 28 [59 Pac. (2d) 163].) We cannot by construction read out of the policy this plain provision contained in it. Such agreement, if the initial premium was paid at a later date than the agreed registered date of the policy, resulted in the insurer receiving compensation during which no liability was imposed upon it. On the other hand, upon delivery of the policy and the payment of the first premium, the insured secured those advantages which flowed from having the policy become effective as of the earlier date. (*Rosenthal* v. *New York Life Ins. Co.*, 94 Fed. (2d) 675, 680.) There is no language in the record which would reasonably justify the contention that the insured did actually

get a full three months' coverage for the first premium. On the contrary, it is clear upon the express terms of the contract that he would be short the period between the registered date of the policy and the date of delivery and payment. The cases cited by plaintiff are distinguishable in this respect. In the cases cited by respondent which set out the terms of the policy we find language which would infer that the insured was to get a three months' coverage for the first quarterly premium.

In the case of *Shira* v. *New York Life Ins. Co.*, 90 Fed. (2d) 953, a very similar contract to the one before us was interpreted by the court. The policy contained the provision that it should not take effect "until the policy is delivered to and received by the applicant and the first premium thereon paid". The plaintiff in that case made the same contention as does the plaintiff in this case. The court said: "The provision in the application does not fix the effective date of the insurance contract. It simply imposes a condition precedent to the taking effect of the insurance coverage. . . . The condition in the application and the provision in the policy proper as to its effective date are not in conflict. When read together, they mean that the insurance coverage shall only take effect in the event the conditions specified in the application are fulfilled, and then as of January 2, 1930." (Citing numerous authorities in support of its decision.) In *New York Life Ins. Co.* v. *Silverstein*, 53 Fed. (2d) 986, 989, the court said: "There is no real inconsistency between these above-quoted provisions in the policy and the provision in the application to the effect that the policy should not take effect until its delivery and the payment of the first premium. The policy definitely provides that the premiums following the first shall be due on definite dates, or at the expiration of definite periods. These contract provisions must control." (See, also, *Travelers Ins. Co.* v. *Wolfe*, 78 Fed. (2d) 78, 80.)

The facts extrinsic to the writing itself introduced by plaintiff do not tend to establish a right in plaintiff to recover under this policy for the death of Mr. Whipple on October 1, 1936. On the contrary, they tend to establish the express conditions of the policy that defendant should be liable only in the event that Mr. Whipple died prior to September 12, 1936, for they disclose Mr. Whipple's desire to have the term policy, when issued, relate back to September

12, 1926, so as to take advantage of the lower age at nearest birthday and consequent lower premium. Mr. Whipple in his first application stated that he was born March 12, 1883, and that his insurance age at nearest birthday was 43 years, and he specifically stated the quarterly premium on the term policy, namely $12.81. This application was not forwarded to defendant until on or after October 1, 1926, and reached the defendant's home office in New York City on October 11, 1926, as is established by the stipulation introduced by plaintiff. It was obvious to Mr. Whipple that his policy could not be *issued* on or prior to September 12, 1926, which was the last date upon which his age at nearest birthday was 43 years. That Mr. Whipple desired the policy to relate back and issue as of age at nearest birthday being 43 years is also confirmed by his second and third applications. The second application was sent by him some time after October 16, 1926, and the third application was signed by him some time after November 19, 1926, but he dated both applications back to September 11, 1926, and in both he stated that his age at nearest birthday was 43 years and requested that the policy be issued with quarterly premiums of $12.81. When Mr. Whipple sent the second and third applications, his age at nearest birthday was 44 years, and had he desired a policy expiring ten years after the date he signed them, such policy necessarily would have been issued on the basis of his age at nearest birthday being 44 years.

The only obligation in the policy for the payment of death benefits is found in the first sentence on the face of the policy, which reads that the defendant "agrees to pay at its home office in the City of New York Three Thousand Dollars in the event of the death of the Insured prior to the twelfth day of September Nineteen hundred and thirty-six". It is an admitted fact in the case and an established one that Mr. Whipple did not die prior to September 12, 1936, and therefore the event upon which the payment of $3,000 was expressly conditioned never occurred and no liability exists.

▪ The plaintiff contends that it is primarily the duty of the trial court to construe the contract. This is true, but the construction placed upon it must be reasonable. It must be a fair interpretation of the language used. (*George Herz & Co.* v. *Solt*, 23 Cal. App. (2d) 178 [72 Pac. (2d) 251].) "When an appeal depends solely upon the construction to be given to the language of a contract from the instrument

itself the reviewing court is called upon to determine the meaning thereof as a matter of law. Under such circumstances the rule on appeal which precludes the appellate court from disturbing the determination of the trial court when there is substantial evidence to support its conclusions has no application." (*Texas Co.* v. *Todd,* 19 Cal. App. (2d) 174, 185 [64 Pac. (2d) 1180].) Under the undisputed facts in the present case, the construction of the contract is a question of law for this court to determine on appeal.

In section 657 of the Code of Civil Procedure the matters which are therein specified as grounds for a new trial apply only when the moving party is aggrieved, and a new trial may be granted only when such matters materially affect the substantial rights of the moving party. In this case a judgment in favor of the defendant was required in any event. It is clear that the plaintiff was not aggrieved and that the alleged errors upon which the plaintiff sought a new trial did not materially affect her substantial rights. The order granting a new trial was unauthorized. (*Bechtel* v. *Chase,* 156 Cal. 707, 712 [106 Pac. 81] ; *Mercantile Trust Co.* v. *Sunset Road Oil Co.,* 176 Cal. 461, 478 [168 Pac. 1037].)

The order is reversed.

Wood, J., concurred.

McCOMB, J., Dissenting.—I dissent.

As pointed out in the majority opinion, the contract which is the basis of the present litigation insured the life of Frank L. Whipple ''for the term of ten years''. The insurance was not to ''take effect until the first premium'' had been paid. (The first premium was actually paid between November 2 and 6, 1926.)

The contract also provided that, ''in the event of the death of insured prior to the 12th day of September, 1936'', the insurer would pay the face value of the policy to the named beneficiary.

Frank L. Whipple died October 1, 1936, which was within ten years from the date of the payment of the first premium and the issuance of the policy, but, of course, subsequent to September 12, 1936.

The majority opinion indicates that the policy was not ambiguous upon its face. This position is based upon the

fact that both plaintiff and defendant have contended that the policy was unambiguous. The fallacy in this argument is:

First: In assuming that, since the parties do not concede the contract to be ambiguous but contend for differing constructions, the result is that the contract is unambiguous. It is similar to a situation where three men are in a room, one of them is blind, the other two look out of a window, and one man says, "I see a white horse on the street." The second man says, "It isn't a white horse; it is a black horse." As far as the blind man is concerned, it is entirely ambiguous to him whether it is a white horse or a black horse, in spite of the fact that the other occupants of the room state in the most positive terms their views of the horse's color.

Second: The majority of the court, by applying certain rules of construction, have arrived at what they believe to be a correct interpretation of the policy. Therefore, they reason that it follows as a matter of course that the policy was unambiguous.

Such reasoning is similar to a case where (taking the example above of three men in a room) a fourth man enters the room and at the request of the blind man looks out of the window and informs him that the horse is in fact white, for the blind man to then say that there never was any doubt in his mind as to the color of the horse, because he now knows its color.

The mere fact that it has become necessary for the majority of the court to resort to rules of construction to determine the meaning of the contract is convincing to me that the contract is in fact ambiguous.

Assuming, as I do, that the contract is ambiguous, the majority opinion disregards two long established rules of appellate procedure in this state:

First: On an appeal from an order granting a motion for a new trial on the ground of insufficiency of the evidence to support the judgment, an appellate court, assuming that there is a substantial conflict in the evidence, will not set aside the order of the trial court granting the motion for a new trial.

Second: It is for the trial court in the first instance to construe ambiguous terms in a contract and, until so construed and the accuracy of the determination of the trial court is questioned directly on appeal, an appellate court

will not in the first instance undertake to construe the ambiguous provisions in the contract.

In *Barlow* v. *Frink,* 171 Cal. 165 [152 Pac. 290], the rule is thus stated by our Supreme Court at page 172:

" . . . Whether a contract is in any of its terms or provisions ambiguous or uncertain is a matter of determination in the first instance by the trial court. If it is found so to be, it is primarily the duty of the trial court to construe it after a full opportunity afforded all the parties in the case to produce evidence of the facts, circumstances and conditions surrounding its execution and the conduct of the parties relative thereto. Until it is so construed by the trial court with this opportunity afforded to the parties and the accuracy of the determination of the trial court is directly questioned on appeal here, we do not think we should in the first instance undertake to construe it and have our determination of the matter operate as the law of the case on a new trial."

It is likewise settled that, where a writing is uncertain and either of two constructions may be sustained, it is not within the functions of a court of review to declare that the interpretation given by the trial court should be supplanted by another construction of which the instrument is susceptible.

In *Kautz* v. *Zurich Gen. A. & L. Ins. Co.,* 212 Cal. 576, 582 [300 Pac. 34], Mr. Justice Curtis thus states the rule:

" . . . The construction given the instrument by the trial court appears to be consistent with the true intent of the parties and where that is the case the appellate court will not substitute another interpretation though it seem equally tenable."

Again in *McNeny* v. *Touchstone,* 7 Cal. (2d) 429, the same learned justice at page 435 [60 Pac. (2d) 986] says:

"This construction appears to be consistent with the intent of the parties, and where the construction given an instrument by the trial court appears to be consistent with the true intent of the parties, the appellate court will not substitute another construction although it seem equally tenable. (*Kautz* v. *Zurich etc. Ins. Co., Ltd.,* 212 Cal. 576 [300 Pac. 34]; *Farmers & Merchants Nat. Bank* v. *Bailie,* 138 Cal. App. 143, 149 [32 Pac. (2d) 157]; *Slama Tire Protector Co.* v. *Ritchie,* 31 Cal. App. 555 [161 Pac. 25]; *Manley* v. *Pacific Mill & Timber Co.,* 79 Cal. App. 641, 648

[250 Pac. 710].) In the last-mentioned case the court elaborates upon the above rule in the following manner: 'On the other hand, if the contract is ambiguous, so that there might be two possible constructions, then we agree with the respondent that the law as set forth in 6 California Jurisprudence, 327, and also in the case of *Slama Tire Protector Co.* v. *Ritchie,* 31 Cal. App. 555 [161 Pac. 25], applies. Hence, if the construction given by the trial court is one which is tenable, and one which appears to us consistent with the true intent and meaning of the parties, it would not lie within the province of an appellate court to set aside the judgment of the trial court and substitute its own interpretation, simply because another interpretation thereof is also possible.' "

To the same effect, see, also, *Whepley Oil Co.* v. *Associated Oil Co.,* 6 Cal. App. (2d) 94, 101 [44 Pac. (2d) 670]; *Hale* v. *Harbor Petroleum Corp.,* 139 Cal. App. 455, 462 [33 Pac. (2d) 1039]; *Manley* v. *Pacific Mill & Timber Co.,* 79 Cal. App. 641, 648 [250 Pac. 710]; *Slama Tire Protector Co.* v. *Ritchie,* 31 Cal. App. 555, 563 [161 Pac. 25].

In the present case it is clear to me that the instrument is ambiguous and the trial court has not as yet placed any construction thereon. Therefore, this court should not undertake, in view of the above authorities, in the first instance to construe the meaning of the ambiguous provisions in the document.

In my opinion the order appealed from should be affirmed.