[S. F. No. 1791.    Department Two. — June 1, 1901.]

FRANK LAIDLAW, Respondent, v. GEORGE T. MARYE, JR., Appellant.

BUILDING CONTRACT — INVALIDITY — FAILURE OF RECORD — RIGHTS OF CONTRACTOR — ASSUMPSIT — MEASURE OF RECOVERY — CASE OVERRULED. — A building contract which is invalid for failure of the contractor to record it, and absolutely void as against sub-contractors and material-men, though it cannot be made the basis of recovery by the contractor, yet nevertheless constitutes the measure and test of the right of the contractor to recover in *assumpsit*. The case of *Rebman* v. *San Gabriel Land and Water Co.*, 95 Cal. 390, is overruled.

ID. — PROOF REQUIRED FROM CONTRACTOR — SUBSTANTIAL COMPLIANCE WITH CONTRACT — RECOVERY LIMITED TO PRICE. — In an action of *assumpsit*, by the contractor, against the owner of the building, notwithstanding the failure to record the contract, the contractor, in order to recover, must show a substantial compliance with the terms of the contract, and the measure of his recovery must, in any event, be limited by the contract price.

ID. — CONTRACT TO LAY NEW WATERPROOF FLOOR — SUBSTANTIAL VARIANCE — FINDING AGAINST EVIDENCE. — Where, by the terms of the contract, as understood by both parties, and as construed against the contractor who drew it, an insufficient, leaky slate floor in the second story of a stable was to be replaced by an entire new floor, put down in deck style, and made waterproof with bitumen, the covering, by the contractor, of one fourth of the old floor with a mere surface floor nailed thereon is a substantial variance. A finding that such contract was complied with is against evidence, and the plaintiff is not entitled to recover.

CONTRACTS — RULES OF CONSTRUCTION — UNCERTAINTY OF PROMISE — INTERPRETATION AGAINST PROMISOR — PRESUMPTION. — If the terms of a promise made in a contract are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it; and the language of the contract is to be interpreted most strongly against the party who caused the uncertainty to exist, and the promisor is presumed to be such party. Such presumption is furthered where it appears that the promisor drew the contract.

APPEAL from an order of the Superior Court of the City and County of San Francisco. Edward A. Belcher, Judge.

The facts are stated in the opinion of the court.

Reinstein & Eisner, for Appellant.

The contract is to be construed against the contractor, in view of the facts of the case. (Civ. Code, secs. 1649, 1654.) The evidence shows that the contract was not substantially complied with; and the contractor cannot recover, notwithstanding the failure to record the contract. (*Marchant* v. *Hayes*, 117 Cal. 670.) Any substantial departure from the contract precludes a recovery by the contractor. (Civ. Code, sec. 1439; *Perry* v. *Quackenbush*, 105 Cal. 309, 310; *Golden Gate Lumber Co.* v. *Sahrbacher*, 105 Cal. 114; *Smith* v. *Brady*, 17 N. Y. 173;[1] *Weeks* v. *O'Brien*, 35 N. Y. 463; 12 N. Y. Supp. 720; *Sherwood* v. *Hartman*, 73 Hun, 544; 26 N. Y. Supp. 150; *MacKnight etc. Stone Co.* v. *Mayor etc. of New York*, 52 N. Y. Supp. 749; 31 App. Div. 232; *Hartman* v. *Meighan*, 171 Pa. St. 46.) There can be no recovery upon *quantum meruit*, where the work is not performed according to contract, if no sufficient excuse is shown. (*Lowry* v. *Farmington & Co.*, 65 Mo. App. 66; *Bonestell* v. *City of New York*, 22 N. Y. 162; *Kocher* v. *Mayberry*, 15 Tex. Civ. App. 342.)

A. E. Shaw, and R. B. McClellan, for Respondent.

The contract being void for want of record, it is void for all purposes, not only as to subordinate claimants of liens, but also as to the contractor. (Code Civ. Proc., sec. 1183; *Rebman* v. *San Gabriel L. & W. Co.*, 95 Cal. 390; *Willamette etc. Co.* v. *Los Angeles College Co.*, 94 Cal. 230; *Donnelly* v. *Adams*, 115 Cal. 129; *Holland* v. *Wilson*, 76 Cal. 434; *Pierce* v. *Birkholm*, 115 Cal. 662; *Kellogg* v. *Howes*, 81 Cal. 170; *Davies etc. Lumber Co.* v. *Gottschalk*, 81 Cal. 641; *Morris* v. *Wilson*, 97 Cal. 644.)

HENSHAW, J.— Plaintiff's complaint charged in two counts. By the first, he sued in *quantum meruit et valebat* for the reasonable value of materials furnished and labor performed by his assignor, which he alleged to be $2,049. Of this sum there remained unpaid $572.25, for which he demanded judgment. By the second, he pleaded an express contract with defendant, under which his assignor was to refloor and repair the floor of the second story of the Nevada Stables for the agreed price of $2,049, of which defendant had only paid the sum of $1,536.75. For the remainder, judgment was sought. Defendant denied all the material allegations of the complaint,

[1] 72 Am. Dec. 442.

excepting the execution of the contract for the work. Judgment passed for plaintiff as prayed for, and from the order denying his motion for a new trial the defendant appeals.

The uncontested facts are that defendant was the owner of the building known as the Nevada Stables. It was occupied by his lessee, and used as a livery-stable. The second floor contained stalls for stabling horses. The tenant complained of the dilapidated and leaky condition of this floor, by reason of which the horses' urine dripped upon and injured the carriages and other vehicles kept on the floor beneath. It was represented to defendant that a new waterproof floor for the second story was a necessity. In conversations with Fletcher, plaintiff's assignor, the need of an entire new floor was frequently discussed. Defendant finally decided to have the work done. Fletcher himself drew the contract with its specifications. Bids were called for, and Fletcher was the successful bidder. He entered upon the performance of the work and carried it to completion. The contract was never recorded, and was therefore "wholly void." As work progressed, payments upon account of it were made. When Fletcher announced its completion, payment of the remainder — the amount here in suit — was refused upon the ground that the work had not been done in substantial compliance with the contract.

To this point the facts are without conflict. The finding that the contract was void for lack of recordation was followed by an additional finding, to the effect that the contract had been substantially fulfilled by Fletcher, and that the reasonable value of his labor and material equaled, and indeed exceeded, the amount sued for. The court also found that since the date of completion the defendant had been in the full use and enjoyment of the construction.

Appellant contends that the work was not performed according to the terms of the contract, and that in substantial particulars there was a failure in this regard. Consequently, he urges that no recovery should have been allowed. Respondent meets this with the counter-declaration that for failure of recordation the contract was "wholly void, and no recovery shall be had thereon by either party thereto" (Code Civ. Proc., sec. 1183); and supporting his position by adjudications upon this language of the code, asserts with boldness the following: "If, as frequently decided, the void contract is as nothing, with

no existence past or present, how can it be said that the contractor could be guilty of a breach of it? The omission to record a contract does something more than deprive a contractor of his right to a lien. It deprives him of his right to recover the price specified therein, unless it is the reasonable value of the work and materials furnished. It deprives the owner of his right to insist on the work being done in accordance with such contract, or to recover in damages for breach of the contract if it is not, and it deprives him of his right to compel the contractor to accept the contract price in full satisfaction of his claim if the reasonable value of his work and materials furnished is greater than that price."

If this be the logical result of our past interpretation of the statute, then must it be said, that if that interpretation is necessary under the law as written, naught remains but to adhere to it, leaving it to the legislature to afford relief. If, however, this interpretation is an erroneous one, then no considerations of adjudicated cases, no rule of *stare decisis*, should prevent a court from correcting mistaken views which lead to such extraordinarily harsh and unjust consequences.

The first question, then, to be resolved is, Do the decisions support the argument and conclusions of respondent's attorney? It must be admitted that they do. The first of them is *Kellogg* v. *Howes*, 81 Cal. 170. The action was brought by material-men, laborers, and sub-contractors to enforce their lien for material furnished and labor done. The contract was void for lack of recordation, and it was said that a contract wholly void is void as to everybody whose rights would be affected by it if valid; and it was decided that the plaintiffs were entitled to recover for the reasonable value of their labor and materials, regardless of the contract price, or the amount of the contract price which might still remain in the hands of the owner. Following this was the case of *Willamette etc. Co.* v. *Los Angeles College Co.*, 94 Cal. 230, where it is said, at page 236, "The finding of the court that there had not been filed in the recorder's office a contract . . . was therefore correct, and the effect of such finding, under the provisions of section 1183 of the Code of Civil Procedure, was to render the contract wholly void for all purposes. It cannot be the basis of a recovery by the contractor against the owner, nor can it be looked to for the purpose of determining the amount for which the owner is liable, or when any payment is to be made." Again,

at page 237, it is said, "If the contract is wholly void, there is neither a contract nor an original contractor." And at page 240 it is further said, "Inasmuch as by a failure to file the contract in the recorder's office it became wholly void, it was not available as a defense for any purpose, either to determine the amount of the contract price, or to limit the liability of the appellant, or as the foundation of a right to complete the building according to its terms." The case of *Willamette etc. Co.* v. *Los Angeles College Co.*, 94 Cal. 230, like the case of *Kellogg* v. *Howes*, 81 Cal. 170, was an action by sub-contractors, material-men, and laborers against the owner, the contract being void for want of recordation. Following this case was decided the case of *Rebman* v. *San Gabriel etc. Co.*, 95 Cal. 390, which was an action by an original contractor under a void contract. It is there laid down that the original contractor may maintain his suit in implied *assumpsit*, and it is said: "The finding that the alleged contract — the only contract relied upon by defendant — never had been recorded, and was therefore wholly void, is equivalent to a finding that there was no written contract. . . . This conclusion is not affected by the facts that a writing corresponding in form to the alleged contract had been signed and delivered by the parties, and that the labor may have been done and materials furnished in accordance with the terms of that paper."

As has been said, these decisions lend support to respondent's position. But it is to be noted that in *Kellogg* v. *Howes*, 81 Cal. 170, and in *Willamette etc. Co.* v. *Los Angeles College Co.*, 94 Cal. 230, the court was dealing solely with the rights of sub-contractors, material-men, etc., under the void contract, and that the language employed had applicability to the situation of those litigating parties alone. Only in the case of *Rebman* v. *San Gabriel etc. Co.*, 95 Cal. 390, was this language first drawn from its context, and made applicable to an action by the original contractor under such a void contract. Yet the situation of the parties is essentially different. Section 183 of the mechanic's lien law affects the rights of three distinct classes of persons: 1. The owner; 2. The original contractor; and 3. The sub-contractors, material-men, artisans, and laborers. With the decision as affecting the last class, no modification of views is necessary or called for. If for the remissness of the parties to the contract it is void, this third class should be, and is, justly entitled under the law to the

value of their material or labor. They are not parties to the contract. They have no voice in its execution or recordation. They furnish material as directed and labor as ordered, and that is all. It is but right, therefore, that the measure of their recovery should be the value given by them, unhampered by the conditions of a void contract. But the situation of the owner and original contractor is totally different. They advisedly agree upon a building contract. The nature of the structure, the character of material, the time of completion, the times and amounts of payments, are all the subject of deliberate consideration. Their minds finally meet, and an agreement is reached. The contractor promises to complete such a structure, with prescribed material, for a fixed price. The owner wants just such a structure, with just such material, and none other, and for it he is willing to pay the price fixed. If it were to cost more, he would not build at all, and there would be no contract. But the law imposes a penalty for non-recordation of a contract before work is commenced. Thus, in a sense, the duty is imposed upon both contractor and owner to see that this is done. Otherwise, says the law, the contract is wholly void, and no recovery thereon shall be had by either party thereto. But the duty so to record is primarily on the contractor, for the very reason that he can always defeat the law and the owner's interest by commencing work before recordation. The owner is helpless in the matter. But to hold that, notwithstanding his failure in this respect, the contractor, because the contract is void, may build what he pleases, of any material he pleases, in any way that suits him, and recover where the contract has not been performed, not only the contract price, but forty times the contract price, is not to punish the contractor for his dereliction, but to put a premium upon a failure to comply with the law, and invite dishonesty and trickery in this matter, and in the matter of the contract itself. What concern is it to the contractor if he loses his lien? An attachment will serve his purpose; and why should he care at what figure he agrees to build a house, when he may recover any amount he is capable of proving, whether he has performed the work in whole or in part, whether it be in accordance with the contract or not? While the contractor may thus be reaping an untoward advantage from his failure to comply with the law, the owner, on the other hand, will be compelled to accept a barn where he expected a house, and to pay for a struc-

ture which he never wanted or contracted for, more than he agreed to pay for the desired edifice. Indeed, he may be compelled to pay full value for an uncompleted building.

Is such a conclusion necessary under the law? We think not; and we think further, that the error arose in *Rebman* v. *San Gabriel etc. Co.*, 95 Cal. 390, by misapplication to original contractors, of language directed solely to the case of sub-contractors, material-men, artisans, and laborers. Heretofore, as will subsequently be pointed out, the court, by the logic of necessity, if from no other consideration, has felt compelled to modify the force of the Rebman decision, but it is certainly preferable that it should at once be overruled, if it be untenable, rather than that it should be undermined and eaten away after a long course of vexatious and expensive litigation, filling the books with discriminated cases, all receding further and further from, and growing more and more dissimilar to, the parent case. When the statute declares that the contract shall be wholly void, it means, as *Willamette etc. Co.* v. *Los Angeles College Co.*, 94 Cal. 230, decided, that it is wholly void as to the third class above designated, who thereupon become entitled to liens for the full value of their material and service, and are deemed to have furnished them to the owner at his special request. By thus allowing full compensation to this class, the owner is sufficiently punished for any remissness on his part, while, with like measure, the original contractor is penalized by losing his lien. But the law never meant to reward the contractor for his disobedience, by conferring upon him, for its violation, greater rights than would have been his had he obeyed it. Therefore, as between him and the owner, the contract must remain, not the basis of his recovery, but the measure and test of his right to recover. He must still show a substantial compliance with its terms, to warrant any recovery at all, and the measure of his recovery, even under implied *assumpsit*, must be limited, as to him, by the contract price. Thus only is the law given a just and harmonious operation. In *Barker* v. *Doherty*, 97 Cal. 10, the cases of *Kellogg* v. *Howes*, 81 Cal. 170, and *Willamette etc. Co.* v. *Los Angeles College Co.*, 94 Cal. 230, were the subject of review, and it is said: "Those cases decided that the contract was void as forming the basis of a recovery, and no legal liability could be created by any of its provisions. This would seem to be apparent from a cursory reading of the provision itself. It was

never intended to hold, in those cases, that the writing could not be used as evidence to determine the character of the building to be erected, and thereby to furnish the test by which it could be known when the building was completed. Such is evident from the fact that in those cases the test of completion of the buildings was furnished by an inspection of the very contracts which were held to be 'wholly void.' Any other interpretation of this provision of the statute would lead to inextricable confusion, and practically nullify the entire section."

*Marchant* v. *Hayes,* 117 Cal. 669, was an action brought by an original contractor against the owner to recover in *assumpsit.* The owner pleaded a contract which had never been performed. Upon the trial it was shown that the contract was void for failure to record. The court further found that the labor bestowed and material furnished by the original contractor were supplied under the terms of the contract, and it awarded the original contractor judgment for the value of such services and material. But in reversing that judgment this court said: "The omission to file the contract in the office of the county recorder deprived the contractor of any lien for the labor and materials (Code Civ. Proc., sec. 1183); but he did not by such omission acquire any greater right to a recovery for his labor and material than he would have had if he had brought an action therefor irrespective of his right to a lien. Under the finding of the court that Hayes was never employed to construct the building except by virtue of the contract of June 18th, and that all the labor performed and all the materials furnished by him were performed and furnished under and by virtue of this special contract, he had no right of recovery, unless he should show that he had completed the contract on his part, or that its completion had been in some way waived or excused." This declaration of the law, we think, is eminently just and sound. It is, as was before said, a recession from the earlier views of the court, and a declaration of the true principle. It is applicable to every case where the contract fails for lack of recordation; for in all of them it is still the understanding of the parties that such work, and only such work, as is called for by the terms of the contract shall be performed.

In the case at bar, no question arises as to the character of the work done by the contractor. It is not in dispute that the

contractor did not wholly refloor the second story. The controversy arises over the interpretation of the contract. If the contract called for the laying of a new floor 3 x 6, clear kiln-dried pine flooring, put down in deck style, and filled with boiling-hot bitumen, then unquestionably the contractor did not comply with his contract, for, admittedly, in the passageways comprising an area of at least a fourth of the whole floor, he merely nailed a surface flooring upon the old flooring which was there.

The provisions of the contract are as follows: "First, the contractor agrees . . . to furnish the necessary labor and materials, including tools, implements, and appliances required, and perform and complete in a workmanlike manner all the work of laying a new floor on the second story of the Nevada Stable." The floor was to be laid in conformity with the specifications. The specifications provided: "The entire stall-floor will be laid with 3 x 6 clear kiln-dried pine flooring, put down in deck style, filled with boiling-hot bitumen, floor driven up tight and bored for the spikes, and then filled up with the hot bitumen."

"The entire stall-floors coated with hot bitumen. Then a two-inch surface-floor laid over the entire stalls, under the horses, a space of $\frac{3}{8}$ x $\frac{5}{8}$ to be laid 2 x 4-inch surface, open joints $\frac{5}{8}$.

"The 3 x 6 floor will be laid lengthwise of the building and furred up to give the stalls 2$\frac{1}{2}$-inch fall in the length of the stalls. Passageway furred up to the level with stall-grating."

We think no one, in reading this contract, could entertain any doubt that its meaning was that the entire flooring of the second story, designated the stall-floor, should be removed, and a new flooring of 3 x 6, laid lengthwise of the building, should be put in its place, and made waterproof with bitumen. The contract calls for "all the work of laying a *new floor* on the second story," not for the laying of a new floor where necessary. In connection with the contract, the opening paragraph of the specifications declares that the *entire* stall-floor shall be so relaid, and in the next paragraph—as noting a recognized distinction between the stall-floor and the floors of the stalls—it is provided that the "stall-floors," or floors of the stalls, in addition to the 3 x 6 flooring, shall have this flooring coated with hot bitumen, and an additional two-inch surface-floor laid on top.

There does not seem, in this contract, to be enough of am-
biguity to call for construction; but, if it be conceded that
such ambiguity exists, remembering that the contractor him-
self drew the contract, that it is indisputably shown that
the owner had discussed with him the necessity for a com-
plete new flooring, that the contractor had said it was
necessary, and that the owner certainly understood the
contract to mean that the entire second story was to be
refloored, the provisions of sections 1649 and 1654 of the Civil
Code at once become applicable. By section 1649 it is de-
clared: "If the terms of a promise are in any respect ambigu-
ous or uncertain, it must be interpreted in the sense in which
the promisor believed at the time of making it that the prom-
isee understood it." Section 1654 declares: "In case of un-
certainty not removed by the preceding rules, the language
of a contract should be interpreted most strongly against the
party who caused the uncertainty to exist. The promisor is
presumed to be such party." In furtherance of this presump-
tion, it is here positively shown that the promisor himself
drew the contract. Moreover, it is in evidence that the two
contractors who likewise bid upon the work both understood
the contract as calling for an entire new floor. The variance
between the work called for and the work done was substan-
tial, and plaintiff was not entitled to recover. (*Perry* v.
*Quackenbush*, 105 Cal. 299; *Marchant* v. *Hayes*, 117 Cal. 669.)

The finding of the court in this regard is therefore unsup-
ported, and the order denying a new trial is therefore reversed.

Temple, J., and McFarland, J., concurred.

Hearing in Bank denied.