WHEPLEY OIL COMPANY (a Corporation), Respondent, v. ASSOCIATED OIL COMPANY (a Corporation), Appellant.

Humphrey, Searles, Doyle & MacMillan, Robert M. Searles, John Parks Davis and W. F. Kiessig for Appellant.

W. H. Stammer and Orrick, Palmer & Dahlquist for Respondent.

JENNINGS, J.—Plaintiff instituted this action for the purpose of recovering from defendant a specified sum of money which was claimed to be due as royalty on casing-head gasoline produced from natural gas derived from an oil well located on plaintiff's land which had been leased by plaintiff to defendant. Certain provisions of the agreement of lease formed the basis for plaintiff's claim that the defendant was legally obligated to pay the amount for whose recovery the suit was brought. Upon the conclusion of a trial of the issues raised by plaintiff's complaint and defendant's answer thereto the trial court made findings of fact from which it drew the legal conclusion that plaintiff was entitled to succeed and accordingly entered judgment

for the amount demanded. From the judgment thus rendered the defendant prosecutes this appeal.

The lease contract between the parties was executed on November 10, 1924. By it the plaintiff, as lessor, agreed to lease to the defendant as lessee, a tract of land located in the Kettleman Hills district in Kings County comprising 160 acres for a term of 20 years. The purpose of the contract was to enable the lessee to explore and drill for oil and other hydro-carbon substances on the land and if possible to produce and extract such oil and substances. Oil was not discovered on the land until August 16, 1930, when a producing well was brought in. About this date the defendant entered into an agreement with the Los Nietos Producing and Refining Company, Ltd., whereby the latter company agreed to process and treat the wet gas produced by defendant on plaintiff's land and to pay to defendant as royalty therefor 50 per cent of the proceeds derived from the sale of the gasoline extracted from such gas. This latter agreement was in effect at the time the present action was instituted and during the period mentioned in plaintiff's complaint the defendant received from the Los Nietos Company 50 per cent of the proceeds derived from the sale of gasoline which was thus extracted from the gas. From the 50 per cent royalty which was thus obtained the defendant regularly paid to plaintiff a royalty of one-eighth of 35 per cent of the proceeds derived from the sale of the gasoline, thus retaining for itself free from any royalty to plaintiff 15 per cent of such proceeds. It was plaintiff's contention that it was entitled to receive a royalty of one-eighth of the entire 50 per cent paid to defendant by the Los Nietos Company.

The provision of the lease contract entered into between plaintiff and defendant which formed the basis for plaintiff's claim is as follows: "If casinghead gasoline is manufactured on the demised premises, or elsewhere, by the Lessee, from gas produced from said wells, then the Lessee shall pay to the Lessors one-eighth (1/8) of the proceeds from the sale of said gasoline less the entire cost of gathering, manufacturing, handling and selling the same. It is agreed between the parties hereto that sixty-five per cent (65%) of the gasoline extracted from gas produced on the demised premises shall be considered as covering the entire

cost of gathering, manufacturing, handling and selling said gasoline and the remaining thirty-five per cent (35%) shall be divided between the parties hereto on the basis of one-eighth (1/8th) to the Lessors and seven-eighths (7/8th) to the Lessee. The Lessee shall have the right to contract for the manufacture of casinghead gasoline from gas produced on the demised premises on the same basis hereinabove mentioned, that is, sixty-five per cent (65%) to the party manufacturing said gasoline and thirty-five per cent (35%) to be divided between the parties hereto on the basis of one-eighth (1/8th) to the Lessors and seven-eighths (7/8th) to the Lessee.''

The trial court interpreted the above-quoted language in accordance with the construction placed upon it by plaintiff and decided that plaintiff was entitled to receive a royalty of one-eighth of the entire proceeds obtained by the defendant from the sale of casinghead gasoline.

It is appellant's first contention on this appeal that the language of the lease which provided for the payment of a royalty on casinghead gasoline is plain and unambiguous, that it clearly provides that an arbitrary figure of 65 per cent should be considered as covering the cost of manufacturing casinghead gasoline and that respondent should be paid a royalty on such gasoline amounting to one-eighth of the remaining 35 per cent after the arbitrary proportion of 65 per cent is deducted from the total amount of such gasoline produced. In connection with this contention it may be remarked that respondent likewise contends that the language is clear and unambiguous but arrives at the exactly opposite conclusion that it was entitled to receive one-eighth of the entire 50 per cent which was shown to have been obtained by appellant under its contract with the Los Nietos Company.

It is our conclusion that the interpretation which the trial court gave to the above-quoted language is not so clearly untenable and so obviously inconsistent with the intent of the parties as manifested by the language of their agreement that we are warranted in disturbing it even though it be assumed that the language is capable of the interpretation for which appellant contends. The provision contains three sentences. The first plainly states that if the lessee, appellant, itself manufactures casinghead gasoline either on or off

the demised premises from gas produced from wells drilled on respondent's land, the lessee shall pay to the lessors one-eighth of the proceeds derived from the sale of such gasoline less the entire cost of gathering, manufacturing, handling and selling the same. In other words, if appellant itself manufactured the gasoline it was obligated to pay to respondent one-eighth of the net proceeds derived from the sale of the gasoline and the net proceeds would be the amount which remained after the entire cost of manufacture, handling and sale was deducted from the gross amount obtained. There is no dispute and obviously there could be no dispute as to the meaning of this sentence. The language employed is too explicit to admit of dispute. The second sentence provides that the parties agree that sixty-five per cent (65%) of the gasoline extracted shall be considered as covering the entire cost of gathering, manufacturing, handling and selling said gasoline and the remaining thirty-five per cent (35%) shall be divided between the parties on the basis of one-eighth (1/8) to the lessors and seven-eighths (7/8) to the lessee. This language is likewise explicit and there can be no doubt as to its meaning. Taking the two sentences together it is manifest that the parties to the contract intended that if the lessee should itself manufacture the gasoline it would pay to the lessors a royalty of one-eighth of the net proceeds remaining after the entire cost of manufacturing, which was arbitrarily fixed at 65 per cent of the gross proceeds, was deducted therefrom. The third sentence provides that the lessee "shall have the right to contract for the manufacture of casinghead gasoline . . . on the same basis hereinabove mentioned, that is sixty-five per cent (65%) to the party manufacturing said gasoline and thirty-five per cent (35%) to be divided between the parties hereto on the basis of one-eighth (1/8th) to the lessors and seven-eighths (7/8th) to the lessee". The language employed in this sentence is likewise plain and definite. By it the possibility that appellant might contract with a third party for the manufacture of casinghead gasoline rather than itself engaging in such manufacture was taken into account and it was specifically provided that it should be privileged to do this on a certain definite basis which was exactly the same basis so far as arbi-

trary allowance for the cost of manufacture is concerned as had been provided in the event appellant itself should perform the work of manufacturing the gasoline. It must be observed that by this language appellant was not given the right to contract for the manufacture of gasoline on any basis other than that which is so definitely described. However, neither of the parties contends that appellant could not properly contract for the manufacture of gasoline on a different basis than that which is so specifically stated. The question which is here presented is whether appellant might contract with a third party on a more favorable basis than the 65 per cent–35 per cent division and yet pay to respondent a royalty based on the allowance of an arbitrary figure of 65 per cent for cost of manufacture. We are not prepared to declare that the construction for which appellant contends is an unreasonable construction. Equally unprepared are we to declare that the interpretation drawn by the trial court is unreasonable or untenable or so clearly inconsistent with the intent of the parties as disclosed by their language that we must substitute therefor the interpretation for which appellant contends. In such a situation, it is settled that a reviewing court is not justified in disturbing the construction adopted by the . trial court. (*Adams* v. *Petroleum Midway Co., Ltd.,* 205 Cal. 221 [270 Pac. 668]; *Kautz* v. *Zurich Gen. A. & L. Ins. Co.,* 212 Cal. 576, 582 [300 Pac. 34]; *Manley* v. *Pacific Mill & Timber Co.,* 79 Cal. App. 641, 648 [250 Pac. 710].)

◼ The record herein, however, shows that the action was tried on the theory that the above-quoted provision of the lease contract was not clear and unambiguous and that the trial court received evidence, without objection, of the negotiations which took place between the parties prior to the execution of the agreement for the purpose of discovering what the intention of the parties was with respect to the happening of the contingency which was shown to have taken place.

Appellant maintains that the evidence thus received for the purpose of arriving at a correct interpretation of the contract entirely fails to support the trial court's construction. Examination of the record compels the conclusion that this contention is untenable. The respondent produced a

witness who was the attorney and counselor of the trustees for the stockholders of respondent at the time the lease was executed. This witness, who took a prominent part in the negotiations which preceded the making of the lease, testified positively that the representative of appellant with whom he discussed the provisions of the lease prior to its execution stated that the arbitrary allowance of 65 per cent for cost of manufacture was merely a guaranty that appellant would not take more than 65 per cent and that if the cost of manufacture should not amount to the arbitrary allowance provided therefor, respondent would receive one-eighth of the net proceeds remaining after deducting the actual cost of manufacture. The evidence produced by appellant on the contrary showed that the allowance of 65 per cent for cost of manufacture was set as an arbitrary figure which should govern whether appellant itself manufactured the gasoline or contracted with a third party for its manufacture. It is idle to contend that the evidence which was presented to the trial court with respect to the circumstances preceding the execution of the contract was not conflicting. It is apparent that the evidence was in direct conflict. ■ Hence, the familiar rule which estops a reviewing court from disturbing an interpretation of language of doubtful meaning which is drawn from conflicting evidence must prevail. (*Laidlaw* v. *Marye,* 133 Cal. 170, 179 [65 Pac. 391] ; *Slama Tire Protector Co.* v. *Ritchie,* 31 Cal. App. 555 [161 Pac. 25] ; *Hasendahl* v. *J. D. Halstead Lumber Co.,* 132 Cal. App. 205 [22 Pac. (2d) 577]. ■ In this connection, it should be noted that it is conceded that the lease contract was prepared by the supervisor of lands and leases of the appellant corporation. In performing the task of interpreting the language of the lease the trial court undoubtedly applied the familiar rule of interpretation which provides that, in cases of uncertainty, the language of a contract shall be interpreted most strongly against the party who caused the uncertainty to exist. Under the circumstances the court was amply justified in applying the above-mentioned principle which is unequivocally declared both by statute (sec. 1654, Civ. Code), and by numerous decisions. (*Laidlaw* v. *Marye, supra; Robert Marsh & Co.* v. *Tremper,*

210 Cal. 572, 574 [292 Pac. 950]; *Cockrill* v. *Boas,* 213 Cal. 490, 493 [2 Pac. (2d) 774].)

 Appellant particularly complains of a number of findings of fact which were made by the trial court. With respect to all of the criticised findings, with the exception of one, the cause of complaint is that they are mere conclusions of law and therefore insufficient as findings of fact in accordance with the familiar principle announced in 24 California Jurisprudence, page 969, in the following language: "It follows that statements of conclusions of law . . . are insufficient as findings."

The first finding which is the object of appellant's above-stated attack is one whereby the trial court simply found that all the allegations of the first seven paragraphs of respondent's complaint are true. Reference to paragraph VII of the complaint shows that therein respondent set forth its interpretation of the language of the lease which provided for the payment of a royalty on casinghead gasoline and that the paragraph concludes with the allegation "that plaintiff is, and has been at all times herein mentioned, entitled to receive from defendant under said lease one-eighth of said entire proceeds so received by defendant from the sale of said one-half of said casinghead gasoline".

Examination of the complaint discloses that the lease contract upon which the cause of action was based was pleaded, first, by attaching to the complaint and by proper reference thereto, a copy of such contract, and, second, by setting forth its substance and the legal effect thereof as contended by respondent. No valid criticism to this method of pleading the instrument is apparent. (*Santa Rosa Bank* v. *Paxton,* 149 Cal. 195, 198 [86 Pac. 193].) Examination of the answer shows that appellant met the allegations of the aforementioned paragraph of the complaint by setting forth its interpretation of the disputed language of the lease and its conclusion of the legal effect thereof. It is obvious that the important feature of the whole case was the interpretation of the language of the contract. Respondent claimed that it should be interpreted in a certain manner. Appellant contended that an entirely different construction should be placed upon it. Both parties produced evidence during the trial to which no objection was interposed which pur-

ported to show the circumstances that surrounded the execution of the lease under the theory that these circumstances would throw light on the language of the instrument and thus enable the trial court to interpret this language in accordance with the intention of the parties at the time they made the contract. Since the action was tried on the theory that the meaning and construction of the language of the contract were doubtful and that extrinsic evidence was required to enable the trial court properly to interpret the language and since it also appears that the extrinsic evidence which was produced was conflicting, the determination of the conflict resulted in a finding of pure fact (*Brett* v. *Vanomar Producers,* 45 Cal. App. 286, 290 [187 Pac. 758]). Appellant's contention that the finding amounts to no more than a conclusion of law is therefore untenable and may not be sustained. ▮ The same reasoning is applicable to the remaining findings of fact which are criticised by appellant on the ground that they are merely conclusions of law and therefore insufficient as findings of fact. Each of such findings is based upon the trial court's interpretation of the disputed language of the lease which was reached by a determination of conflicting extrinsic evidence produced by the parties for the purpose of enabling the court to perform the necessary task of interpretation. It is observed by appellant that portions of these findings are unnecessary, since the facts which are there found are admitted by the answer. It is obvious that such portions are harmless. Appellant has no reason to complain because the court has found the existence of certain facts which it admits are true.

As to the trial court's fourth finding of fact a different attack is presented. This particular finding states that it is not true that, during the life of the contract between the parties, the cost of gathering, manufacturing, handling, and selling the casinghead gasoline from the leased premises has fluctuated or that in other contracts the cost of manufacturing the casinghead gasoline has been a matter of dispute between the oil-producing companies and their lessors or that the clause of the lease contract between the parties which contains the disputed language was inserted in said contract for the purpose of avoiding any dispute between

the parties as to the cost of gathering, manufacturing, handling, or selling said casinghead gasoline.

It is conceded that the first part of this finding which finds that it is untrue that the cost of manufacturing the casinghead gasoline from the leased premises has fluctuated during the life of the lease was inserted to meet an allegation of the answer that there was such fluctuation. It is however, observed that the court specifically limited its finding with respect to fluctuation of cost to the casinghead gasoline produced on the leased premises, whereas, it is urged that the allegation of the answer is that the cost of manufacturing casinghead gasoline generally has fluctuated and that appellant attempted to prove general fluctuation during the trial, but was not permitted to do so.

The language of the answer is as follows: "This defendant further alleges that during the life of said lease contract between the plaintiff and defendant the cost of gathering, manufacturing, handling and selling *the* casinghead gasoline has fluctuated" (italics ours). The remainder of the paragraph in which the above allegation is contained is in the following language: "and in other contracts has frequently been a matter of dispute between the oil producing companies and their lessors; that said clause above referred to and quoted from said lease was inserted therein for the express purpose of avoiding any dispute between the plaintiff and defendant as to the cost of gathering, manufacturing, handling and selling said casinghead gasoline, and is binding and conclusive on both parties, irrespective of whether the cost to defendant of such gathering, manufacturing, handling and selling said casinghead gasoline is sixty-five per cent of the proceeds derived therefrom or any greater or lesser sum".

It is evident that the trial court entertained the opinion that fluctuation of the cost of manufacturing casinghead gasoline generally was immaterial to the issues of the action then pending before it. In arriving at this conclusion we cannot declare that the trial court committed error. The court was faced with the task of interpreting certain language of the contract which related to the cost of manufacturing casinghead gasoline extracted from gas which was produced on the leased premises. Appellant was in-

sisting that the language meant that an arbitrary allowance of 65 per cent of the total amount of such gasoline was fixed by the parties as the cost of manufacture whether appellant itself engaged in the business of manufacturing such gasoline or contracted with a third party for its manufacture. To sustain this contention it produced evidence which tended to show that during the oral negotiations between the parties which preceded the execution of the contract this particular matter was discussed and the parties agreed on the arbitrary percentage allowance. Certainly evidence which tended to show that after the lease contract between appellant and respondent was executed and during its existence there was a general fluctuation in the cost of manufacturing such gasoline could throw no light on the essential element of the intention of the parties at the time the lease was executed. If the evidence had been admitted and it had been made to appear therefrom that there was such general fluctuation of cost the court would have derived no assistance therefrom in its performance of the task of interpretation.

Furthermore, we think the court was justified in taking the view that the language of the answer respecting the fluctuation of cost related to the manufacture of casinghead gasoline produced on the leased premises and in so finding. The grammatical construction of the sentence is indicative of such an intent. The employment of the article ''the'' modifying the phrase ''casinghead gasoline'' is significant. In the paragraph immediately preceding that in which the allegation relating to fluctuation of cost is found, casinghead gasoline is twice mentioned in each instance accompanied by the modifying adjective ''said''. It may not be denied that thereby appellant referred, not to casinghead gasoline generally, but to the particular casinghead gasoline produced on the land leased from respondent. When, therefore, appellant next states that during the life of the lease the cost of manufacturing *the* casinghead gasoline has fluctuated it is reasonable to assume that it is continuing to refer to the very casinghead gasoline produced on the leased land.

The finding is further criticised because it states that it is untrue that in other contracts the cost of gathering, manu-

facturing, handling and selling the casinghead gasoline has been a matter of dispute between the oil-producing companies and their lessors.

It is declared that appellant offered to prove other oil and gas leases which were executed between 1924 and 1930 and was not permitted to do so. It is said that this evidence was preliminary to showing that disputes had arisen between oil companies and their lessors regarding the manufacture of casinghead gasoline. The record shows that appellant sought to introduce evidence which would tend to prove that, during a period of approximately six years after the execution of the lease agreement between the parties to the present action, appellant had made two other contracts with respect to the manufacture of casinghead gasoline. The record further definitely shows that the reason given for seeking to introduce this evidence was that if the provisions of one of such contracts which affected territory near the Kettleman oil field had been written into the contract between the parties to this action the respondent would actually have received $41,000 less as royalty on casinghead gasoline than they did receive under the 65 per cent–35 per cent basis contended for by appellant. The record shows that objection was made to the introduction of the offered evidence on the ground that it related to the execution of other contracts subsequent to the execution of the lease between appellant and respondent and could not therefore shed any light on the intention of the parties in making the agreement which formed the basis of the present suit and that the evidence was further irrelevant and immaterial as tending to show an isolated contract without any preliminary showing that it had any connection with the lease contract between appellant and respondent. There was no showing that the evidence was offered as a preliminary step to a showing that disputes had arisen between oil companies and their lessors regarding the manufacture of casinghead gasoline. We have no means for determining whether the offered evidence would have tended in the slightest degree to show that such disputes had arisen. We can, however, declare and do declare that the rejection of the offered evidence, bearing in mind the single reason given for its offer, was correct.

Appellant complains that the court made a positive finding that it was not true that in other contracts the cost of manufacturing casinghead gasoline had been · a matter of dispute between oil-producing companies and lessors of oil-bearing lands and that there was no evidence before the court to justify such a finding and that the finding is fatally uncertain because it does not appear what "oil producing companies and their lessors," or what "other contracts" are referred to in the finding.

The complaint is wholly untenable. If the portion of the finding to which the objection of uncertainty is raised has any importance, it is obvious that it was designed to meet the positive allegation in appellant's answer to the effect that "in other contracts" the cost of manufacturing casinghead gasoline had "frequently been a matter of dispute between the oil producing companies and their lessors". Since appellant had affirmatively alleged that such was the case the burden rested upon it to support its positive allegation by competent evidence. So far as appears, it made no effort to do so and may not now complain that the trial court has taken note of its failure in this regard by making a negative finding. Furthermore, it is apparent that the finding of itself is wholly inconsequential and unimportant. Whether or not the cost of manufacturing casinghead gasoline had given rise to frequent disputes between oil-producing companies and their lessors generally is a matter which is not in the slightest degree pertinent to the question of interpretation which was involved in the present action.

Appellant also complains that the final part of the criticised finding specifically states that it is not true that the clause of the lease contract which provided for the payment of a royalty on casinghead gasoline was inserted for the purpose of avoiding any dispute between appellant and respondent as to the cost of manufacturing said casinghead gasoline.

It is declared that this portion of the finding is wholly unjustified because certain evidence to which reference is made showed that the parties to the contract discussed the matter of the cost of manufacturing casinghead gasoline and that · appellant's representative said that respondent

would receive one-eighth of 35 per cent and "there would be no questions from then on as to how the gasoline was split".

Appellant's complaint for insufficiency of the evidence to support the finding may be dismissed with the observation that the evidence respecting this feature of the matter was conflicting. Furthermore, there is not an iota of evidence tending to show that the clause was deliberately inserted for the purpose of avoiding any future dispute between the parties as to the cost of manufacturing casinghead gasoline in the event such gasoline should be manufactured by a third party with whom appellant might contract for such manufacture. Finally, it should be observed that the finding is of no importance. If the court had found in accordance with appellant's contention that the clause was inserted for the stated purpose it is obvious that the purpose failed and the disputed language of the contract would have been clarified in no respect by a finding that the parties inserted the clause for the purpose of avoiding the possibility of a future dispute regarding the cost of manufacturing casinghead gasoline.

Appellant's final complaint is that the trial court's finding that respondent did not accept the monthly payments made by appellant under the lease contract in full satisfaction of all royalties due from appellant on account of casinghead gasoline produced on the leased premises is lacking in evidentiary support.

The evidence with respect to the royalty payments by appellant may be summarized as follows: Beginning on September 20, 1930, and on or about the twentieth day of each succeeding month appellant drew a check payable to the order of the Fresno branch of the Security-First National Bank of Los Angeles and caused the check to be delivered to the Fresno bank. Attached to each of such checks was a statement showing the amount of money payable to respondent for its proportion of gasoline produced on the leased premises during the preceding 30 days and another amount payable to respondent for its share of dry gas produced during the same period. The total of these two amounts constituted the amount of money represented by the check to which the voucher was attached. The voucher was detached from the check and sent to respondent. On

the reverse side of each check the following statement appeared: "Endorsement by payee of this check guarantees acceptance of it in full settlement of account as stated on accompanying voucher which he acknowledges to have received and detached." Each check was endorsed as follows: "Deposited to the credit of Whepley Oil Co. Fresno Branch, Security-1st National Bank of Los Angeles." After being thus endorsed each check was then deposited to the credit of respondent in the payee bank. So far as the record shows no officer or director of respondent saw any of these royalty checks. However, at the time the check was drawn a complete statement showing the total production of dry gas for the preceding month, the royalty of one-eighth of such amount payable to respondent and the total amount of wet gas treated, the amount of gasoline extracted therefrom, gasoline revenue amounting to 35 per cent of the gasoline extracted and royalty payable to respondent amounting to one-eighth of the 35 per cent of the total amount of gasoline extracted was prepared and sent to respondent. The undisputed evidence of respondent showed that respondent had no knowledge of the existence of the contract between the Los Nietos Producing Company and appellant whereby appellant received 50 per cent of the proceeds of casinghead gasoline instead of 35 per cent thereof until about the month of April, 1931. Appellant was thereupon notified that respondent was contending that it was entitled to receive a royalty of one-eighth of the 50 per cent derived by appellant from casinghead gasoline. On July 2, 1931, respondent requested that the matter be submitted to a board of three arbitrators as was provided in the contract. For several months thereafter an effort was made to select three arbitrators to whom the controversy might be submitted. The effort was unsuccessful and on December 29, 1931, the parties entered into a formal contract one of the provisions of which stated that a controversy had arisen between them as to the method and basis of payment of royalties on casinghead gasoline and that either party might thereafter institute action to determine such controversy without prior submission to arbitration. The delivery by appellant of the checks representing monthly payments of royalties to the Fresno branch of the Security-First Na-

tional Bank of Los Angeles was accomplished in accordance with the following provision of the lease: "The lessee agrees to make payment to the Lessors on the twentieth (20th) day of each calendar month for all royalty substances purchased by the Lessee from the Lessors during the preceding calendar month, said payment to Lessors for royalty substances and, or moneys paid for monthly rentals are to be made to the Pacific Southwest Trust & Savings Bank, Fresno Branch, or the successors of said bank as agent for the Lessors, and the receipt of said Bank as agent, shall be and taken to be the same as if the Lessors themselves had acknowledged it and shall be responsible for the proper distribution of the moneys paid."

Appellant contends that the foregoing evidence showed that there was a complete accord between the parties and full satisfaction each month of the amount agreed to be due to respondent as royalty on casinghead gasoline. It is therefore urged that the trial court's findings specifically negativing such accord and satisfaction are wholly unsupported by the evidence and that the judgment should therefore, for this reason, be reversed.

From the above stated recital of the evidence which related to the payment of royalty, it is apparent that the first seven payments of royalty on casinghead gasoline were received and accepted by respondent without any knowledge that the information respecting the revenue derived by appellant from the sale of casinghead gasoline which appeared in the monthly statements rendered by appellant was untrue. As heretofore noted, each of such monthly statements contained a plain, unequivocal declaration that the revenue derived by appellant from gasoline during the preceding month was based on a calculation of 35 per cent of the total amount of gasoline produced during such month. It is conceded that during all of this time appellant actually derived a revenue from casinghead gasoline which was based on a calculation of 50 per cent of the total amount produced under the contract with the Los Nietos Producing Company.

It is our conclusion that, during the time respondent was ignorant of the fact that appellant was actually receiving 50 per cent instead of 35 per cent of the total production

of casinghead gasoline, it may not be successfully contended that the receipt of royalty payments for such gasoline calculated on the basis of the smaller percentage established an agreement by respondent to accept the smaller amount.

There is no strange magic in the legal doctrine of satisfaction and accord. An accord is an agreement to accept, in extinction of an obligation, something different from or less than that to which the person agreeing to accept is entitled. (Civ. Code, sec. 1521; *Sierra etc. P. Co.* v. *Universal Elec. etc. Co.,* 197 Cal. 376, 386 [241 Pac. 76].) In order that the doctrine shall be applicable it must appear that there is a dispute between the parties as to the amount due. (*Berger* v. *Lane,* 190 Cal. 443, 447 [213 Pac. 45].) The intention of the parties is an essential element of the doctrine. (*Everhardy* v. *Union Finance Co.,* 115 Cal. App. 460, 464 [1 Pac. (2d) 1024].) Accord signifies an agreement between the parties, and the primary principles which govern the law of contracts are necessarily applicable in arriving at a determination of the question as to whether or not there was an accord and satisfaction. One of such principles is the fundamental rule that there must be a meeting of the minds of the contracting parties in order that a contract shall come into existence. Since it is undenied that respondent had no knowledge of the existence of the contract between appellant and the Los Nietos Company, whereby appellant received 50 per cent of the gross amount of casinghead gasoline produced on the leased premises until April, 1931, it is idle to contend that the acceptance of royalties based on a receipt by appellant of 35 per cent prior to this date amounted to an agreement to accept the smaller percentage as a basis for calculation of royalty. (*Meyer* v. *Henry Cowell Lime etc. Co.,* 21 Cal. App. 602, 604 [132 Pac. 611].) Up to the time respondent was apprised of appellant's contract with the third party there was and could be no dispute between the parties to this action as to the royalty due on casinghead gasoline. Appellant makes some suggestion relative to respondent's opportunity to have discovered sooner than it did that appellant was receiving 50 per cent rather than 35 per cent. We are unable to discover in the facts of this case any reason to apply the doctrine that opportunity of discovery is the equivalent of

knowledge. The circumstances here presented do not demand application of the suggested principle.

 We likewise fail to discover that the evidence was sufficient to establish that an accord and satisfaction took place when respondent continued to accept the monthly payments based on the smaller percentage after it was informed that appellant was actually receiving the larger percentage. The evidence clearly showed that respondent promptly advised appellant that it took the position that it was entitled to receive a royalty based on 50 per cent rather than the royalty based on 35 per cent and made seasonable request that the controversy be submitted to arbitrators as was provided in the lease contract. The evidence also shows that appellant acquiesced in the proposal for arbitration and that for a period of several months the parties endeavored to select a board of three arbitrators as was provided in the lease. When it finally developed that a third arbitrator mutually acceptable to both parties could not be selected, the parties agreed that the matter should be submitted to a court. The acceptance by respondent of amounts smaller than it was demanding during the time when negotiations for arbitration were being carried on is not indicative of an accord. It may not be argued successfully that respondent who, during all of this period, was insisting that it was entitled to larger royalty payments, evidenced an intention to abandon its claim by its acceptance of smaller amounts.

Our conclusion that the trial court's findings negativing existence of an accord and satisfaction are supported by the evidence has been reached without consideration of respondent's contention that the bank which received the royalty checks was not authorized to agree to accept the payments in full settlement of respondent's claim. The only evidence respecting the scope of the bank's agency which was presented to the trial court consisted of the hereinabove quoted language of the lease respecting the making of royalty payments to the bank ''as agent for the Lessors'' which provided that ''the receipt of said Bank as agent, shall be and taken to be the same as if the Lessors themselves had acknowledged it''. Taking the language in its entirety it would appear that the bank was empowered to do no more than to receive and to acknowledge the payments which

were delivered to it in the manner heretofore described. It is not contended that the bank had any knowledge of the contract between appellant and the Los Nietos Producing Company prior to the time respondent became informed of its existence. No question of the bank's duty to advise its principal of the existence of this contract could therefore arise.

For the reasons stated herein the judgment is affirmed.

Barnard, P. J., concurred.

MARKS, J., Concurring.—This case was tried upon the theory that the provisions of the oil lease governing the royalty to be paid by respondent on the manufacture of gasoline from casinghead gas were uncertain and ambiguous and the introduction of parol evidence was permitted to aid the trial court in interpreting them. If these provisions be so regarded, the foregoing opinion effectually disposes of the contention of appellant that the evidence does not support the views of the trial judge on this question as disclosed in the findings and judgment.

My interpretation of the terms of the lease, in regard to their being uncertain and ambiguous, is somewhat different from that put upon them by counsel for both parties during the trial. In my opinion the language of this paragraph pertaining to the royalty to be paid on the manufacture of gasoline, when read in connection with the balance of the lease of which it is a part, is sufficiently clear and certain and should be interpreted from that language without the need of evidence bearing upon the intention of the parties using it.

In the first place, under this paragraph, the right to extract casinghead gasoline from the gas is permissive and no duty is placed upon appellant to produce it. If appellant avails itself of the right to produce gasoline from casinghead gas, either one of two conditions governing the method of determining the royalty due respondent is contemplated; first, when manufactured by the lessee either on or off the leased premises, and, second, when extracted by a third party. If the lessee elects to extract the casinghead gasoline itself it is clear that it must pay to the

lessor one-eighth of the proceeds derived from the sale of such gasoline less "the entire cost of gathering, manufacturing," handling and selling the same". This cost is arbitrarily fixed at sixty-five per cent of the gasoline so extracted from the gas. The lessee is given the right, which it is not required to exercise, of contracting with a third party to extract this gasoline. If it elects to take advantage of this right, it is given the further privilege of paying to the party with which it contracts, sixty-five per cent of the gasoline so manufactured as the cost of manufacture. The right to so pay this sixty-five per cent is permissive only and no duty is cast upon the lessee to pay such a percentage of the gasoline to the manufacturer. The lessee availed itself of the right, given it in the lease, to contract with a third party to extract the gasoline but did not exercise the right to pay it sixty-five per cent of the gasoline manufactured as the cost of manufacture. It is therefore evident that while the quoted paragraph clearly provides for respondent's share of the gasoline in the instances (1) where appellant manufactured the gasoline itself, and (2) where it contracted with a third party and agreed to give the manufacturer sixty-five per cent of the gasoline as the cost of manufacture, neither of these contingencies arose as it contracted with a third party for the manufacture of the gasoline and agreed to pay it, not sixty-five, but fifty per cent of the gasoline manufactured, as the cost of manufacture. Therefore, I must examine the other paragraphs of the lease in order to determine if any of the other provisions are applicable to this situation which evidently is not covered by the paragraph specifically pertaining to the manufacture of gasoline.

The lease gave the right to "the Lessee of exploiting and drilling for, developing, producing, extracting, bringing to the surface, obtaining, taking, storing, removing and carrying away petroleum, oil, natural gas, naphtha, and other mineral oil, and hydrocarbon substances in, upon and from said land, . . . " It also required the lessee to pay to the lessor "a royalty of one eighth (1/8th) of the net amount of all petroleum, oil naphtha and other hydrocarbon substances which may be produced and saved from the demised premises, . . . "

I understand that gasoline is included within the term "other hydrocarbon substances" as that expression is generally used in oil leases. Therefore, if the royalty to be paid to respondent on the gasoline manufactured is not covered by the paragraph specifically dealing with the subject, it should be determined by the general royalty provisions of the lease just quoted. The term "net" is in common use and means the clear profit remaining after deducting all expenses. The expense to appellant of producing the gasoline was the fifty per cent paid to the manufacturing company which left fifty per cent of the gasoline manufactured as the "net amount of . . . other hydrocarbon substances . . . produced and saved from the demised premises". It therefore seems clear to me that, under the clearly expressed language of the lease, respondent is entitled to one-eighth of the fifty per cent of the gasoline received by appellant, or, as this gasoline had been sold, to the one-eighth of the proceeds of the sale of this fifty per cent which the judgment gave it.

[Civ. No. 1379. Fourth Appellate District.—April 11, 1935.]