[Civ. No. 4091. Fourth Dist. Apr. 6, 1951.]

LLOYD E. GOAD, Respondent, v. JOE ROGERS, Appellant.

West, Vizzard, Howden & Baker and James Vizzard for Appellant.

J. W. Heard, Jr., for Respondent.

GRIFFIN, J.—Defendant appeals from a judgment in favor of plaintiff based upon an action for damages for breach of an alleged oral contract of employment.

Plaintiff's complaint alleges generally that on August 1, 1948, plaintiff and defendant entered into an oral agreement whereby plaintiff was employed as manager of defendant's theatre at Lamont, California, for a period of one year, commencing on that date, at a weekly salary of $100 per week, payable weekly, plus 15 per cent of the net proceeds to be derived from the operation of such theatre to be paid at the end of the one year's period; that as additional compensation defendant agreed to provide plaintiff with a completely furnished house in such town, at a small monthly rental; that on August 1, 1948, plaintiff entered upon such employment and was thereafter able and willing to continue the same but on September 14, 1948, defendant wrongfully discharged plaintiff; that plaintiff's wages were paid to September 9, 1948, and that he received nothing thereafter; that defendant

failed to provide furniture for the house involved and that plaintiff was forced to buy such furniture and as a result of such discharge and failure plaintiff suffered certain alleged damages.

The answer admits such employment pursuant to an oral agreement, but claims it was to be at the will of the respective parties and not for any fixed or definite term. Further, it denies plaintiff was to receive any portion of the net proceeds or a house equipped with furniture. It further alleges as an affirmative defense, that plaintiff was discharged as a result of certain alleged misconduct (which the trial court found to be untrue), and that defendant gave plaintiff two weeks' notice of termination of employment and offered to pay the plaintiff the sum of $200 during such two weeks' period and that plaintiff was to render no services thereafter. By cross-complaint defendant sought to recover from plaintiff certain alleged advances as an offset to plaintiff's demand.

The trial court found in accordance with the allegations of the complaint except it found that plaintiff was not to receive any portion of the net profits and that defendant was not to furnish plaintiff a completely furnished house. It found that plaintiff was willing to perform and that plaintiff was entitled to recover from defendant an amount equal to one year's wages, less certain advancements made by defendant.

The complaint is that the court's finding that defendant employed plaintiff for a term of one year and the finding that plaintiff was willing to perform the agreement are unsupported by the evidence.

Plaintiff's testimony shows that plaintiff was a man of about 25 years' experience in various phases of the motion picture industry and was then employed by Screen Guild Pictures as a "film salesman" negotiating with independent theatres for the use and rental of motion picture films. From time to time he contacted defendant in his theatre in Kern County, arranging film use and rental. Defendant had only been in the theatre business a short while and did not understand its operation. In May of 1948, defendant asked plaintiff to find a theatre manager for him. When plaintiff was unable to find such a manager, defendant then sought to employ plaintiff as manager. The matter was discussed in June of 1948, when defendant gave plaintiff an oral 90-day option to lease the theatre. On July 7, 1948, defendant contacted plaintiff at his office in Los Angeles and renewed his offer of employment, which plaintiff then accepted.

The gist of plaintiff's testimony as to this meeting is that defendant and his son came to plaintiff's office and talked to him about coming to Lamont and taking over the theatre; that defendant told him he had considerable business in Texas and that he would like to turn the theatre over to someone; that plaintiff told defendant that his position with the Screen Guild Pictures was only four days a week and that the theatre would require seven days and seven nights a week; that if he left he would lose his seniority with that company, and in addition he did not know where his family would live if they moved to Lamont; that on that occasion they "discussed the terms of what would be my contract with the Lamont Theatre"; that defendant offered him $125 per week and that he told him he did not think this theatre would stand that amount; that he would rather work for $100 per week to begin with and "if the first year warrants it, when we exercise the option that will be in the contract for the second year and we will raise it to $125"; that Mr. Rogers was to pay him $25 per week expenses, plus 15 per cent of the net profit at the end of the year. In response to the question propounded "Was there anything said in this conversation of July 7th about renewing the employment contract?" the answer was "Yes, I said I explained the reason for the one year contract, and taking the $100 rather than $125 a week. The second year would be approximately $125 if we were successful the first year." He then stated that he told defendant: "I thought it would be better to start at $100 a week and if the second year warranted it, when the option was picked up or renewed then increase the salary to around $125 with the percentage arrangement remaining"; that he then told defendant: "I would rather take a hundred dollars a week and at the end of the first year, if the house warrants the $125, then we will go to $125, plus the percentage, plus expenses." He then testified that he and defendant agreed that the employment agreement was subsequently to be reduced to writing; that, however, the exact terms of the agreement had already been worked out, and the writing was merely to set forth such orally agreed terms; that meanwhile, the oral agreement was to become effective immediately upon plaintiff's taking over as manager; that at one particular time defendant asked if he did not think the contract should wait until after the expiration of the option to lease the theatre, that defendant told him later that he did not want to lease the theatre and that as soon as the option expired, on Sep-

tember 5, he would come into the theatre office and draw up the written agreement; that defendant also told him that: "When you get up there, after you get in, and get set, why we will go in and have Jim (the lawyer) draw it up." In plaintiff's deposition, offered in evidence by defendant, plaintiff was asked the question: "Now, when you talked to Joe Rogers first, how long was it agreed your employment should continue at Lamont? A. Specifically, one year." He also testified there that defendant also told plaintiff that he "wanted you (plaintiff) to come over and take it over and be there 'from now on' ''; that he did not specifically say anything about limiting it to a year but only that the contract would be drawn up in the lawyer's office for the first year; that he told defendant that he was going to have Mr. Vizzard draw up the contract for one year with an option for years to follow "providing, of course, I am able to save the film rental that we hope to save, and increase the grosses," and that defendant Rogers said "That is right," and that the deal was to be worked out under the terms of a written contract which the two were to have the attorney draw; that defendant "was very anxious to have me come earlier. Whether it was before I actually went to work or after, it was to take effect on August 1st." The contract was to become effective as of August 1st.

Plaintiff then testified that in view of plaintiff's acceptance of defendant's oral offer of employment and of the agreed terms thereof, he did on July 7, 1948, notify the various film companies that he would be taking over as manager of the Lamont Theatre and that at defendant's request plaintiff tendered his resignation to the Screen Guild Pictures, commenced work for defendant on July 18, and that during the ensuing two weeks plaintiff did not act as manager of the theatre but made a study of its operations, preparing to take over on August 1st; that he moved his family to the home mentioned, took over the management of the theatre on August 1st, and at that time the parties orally reiterated the terms of the employment agreement and placed it in immediate effect, although it had not been reduced to writing. A similar conversation is then related by the plaintiff as to the nature of that oral agreement.

It. is defendant's position on this appeal that in the preliminary negotiations there was no agreement reached as to the fact that the employment contract was to be for one year, and likewise that there was no agreement that it was to take

effect on August 1, 1948, it being defendant's contention that the contract of employment, if any, was an oral agreement extending beyond the one-year period and was unenforceable under the provisions of the statute of frauds. (Civ. Code, § 1624, subd. 1.)

The evidence is sufficient to support the court's finding that the employment agreement was for the definite period of one year, commencing August 1, 1948. ██ Where the evidence as to the negotiations forming the basis of the alleged oral contract is in conflict, the question is one of fact, and it is for the trial court to determine from the evidence whether a contract was proven, and all reasonable inferences are to be indulged in to support the findings. (*Townsend* v. *Flotill Products, Inc.*, 82 Cal.App.2d 863, 866 [187 P.2d 466]; 2 Cal. Jur. p. 870, § 510.)

It is next contended by the defendant that the evidence conclusively shows that the employment agreement was not to become effective until reduced to writing. The evidence on this question was conflicting and the question of the intent of the parties was for the determination of the trial court. It has been held repeatedly that when the respective parties orally agree upon all of the terms and conditions of an agreement with the mutual intention that it shall thereupon become binding, the mere fact that a formal written agreement to the same effect is to be prepared and signed does not alter the binding validity of the original oral agreement. ██ Whether it was the mutual intention of the parties that the oral agreement should become binding *eo instanti* is to be determined by the surrounding facts and circumstances of a particular case and is a question of fact for the trial court. (*Johnston* v. *Twentieth Century-Fox Film Corp.*, 82 Cal.App. 2d 796, 821 [187 P.2d 474]; 6 Cal.Jur. p. 227, § 149.)

██ Defendant next complains of the finding that plaintiff was able and willing to continue his services under the agreement. This is based upon certain conflicting evidence between the plaintiff and the defendant in regard to plaintiff's dismissal and an attempted compromise which the attorney for defendant endeavored to bring about. It appears that after plaintiff operated the theatre for several months some difficulty arose between the parties; that they met in the attorney's office and defendant said: "I guess we can't get along. I am going to have to call it all off." Plaintiff testified that he said: "I am pretty disgusted with it myself. I have got

a wife and baby that causes me some concern, and now I am out of a job. I have got to take them back to Los Angeles. . . . I am willing to book the theatre up for you for ten weeks, or approximately to November 15th, and you pay me only the one hundred dollars a week salary, and in that way that will give you approximately sixty days to get new personnel or someone to operate the theatre, or an agency, or dispose of it in some other manner, and I will stay out of the theatre.'' He testified that Rogers agreed to this and agreed that they would both be back in the morning and sign an agreement to that effect. He then testified that he went home and about an hour later defendant and his son drove up and told him that they were ''dropping the midnight shows out of the theatre,'' which were booked until November 15th; that the next morning defendant said ''We have changed our minds. You and your big shot ideas, we are not going to pay you anything. You can take your big shot ideas and get out of here''; that he told defendant ''. . . isn't an agreement an agreement, or not?'' and that defendant said: ''I don't care, sue me, I have had a dozen lawsuits and never lost one of them''; that he threatened him with physical violence and stated to him that ''We didn't agree to pay any hundred dollars a week, we agreed to pay a hundred dollars a month until November 15th''; and that plaintiff said: ''All right gentlemen, we will discuss it later''; and that he then instituted this suit.

On cross-examination there was some evidence produced that in the attorney's office plaintiff indicated he would accept $800 for his eight weeks' service but that defendant offered him a check for $200. It is plain from the evidence that there was no satisfaction and accord or novation, as contended by defendant, for the reason that there was no meeting of the minds and no acceptance of the offer. (*Sierra & San Francisco P. Co.* v. *Universal Electric & Gas Co.*, 197 Cal. 376 [241 P. 76]; *Blumer* v. *Madden*, 128 Cal.App. 22 [16 P.2d 319]; *Whepley Oil Co.* v. *Associated Oil Co.*, 6 Cal.App.2d 94 [44 P.2d 670].) We see nothing in the evidence which indicates that plaintiff was not ready and willing to continue his services as manager for the balance of the year. The finding of the trial court in this respect is fully supported.

The last argument is that there was no mutuality of obligation in the oral agreement between the plaintiff and the defendant (citing *Shortell* v. *Evans Ferguson Corp.*, 98 Cal. App. 650 [277 P. 519].) The theory is that plaintiff was not

bound by any promise to continue the employment for a period of one year by reason of the fact that the employment could be terminated at any time by the plaintiff, through the exercise of the option rights he held prior to the alleged making of the contract regarding the leasing of the theatre, and that the option did not terminate until September 5, 1948. We see no merit to this contention. A fair and impartial reading of the testimony in this respect indicates that plaintiff gave up his rights to exercise such oral option when he entered upon his employment contract. According to plaintiff's testimony, the defendant himself canceled that option. The testimony is that ''Mr. Rogers said that he didn't wish to sell the theatre, he didn't wish the option to be exercised that he had given to me on June 5th at his home in Bakersfield to be exercised. He decided he would like to keep it.''

The findings about which defendant complains are sufficiently supported by the evidence.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.